[Civ. No. 20369. First Dist., Div. One. Sept. 4, 1962.]

JOHN MAURO, Plaintiff and Appellant, v. DEPARTMENT OF MENTAL HYGIENE et al., Defendants and Respondents.

Cominos & Shostak, Lawrence Shostak and Theodore H. Cominos for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Defendants and Respondents.

BRAY, P. J.—Petitioner appeals from an order vacating entry of order denying application for writ of prohibition and substituting judgment denying application for writ of mandamus and findings of fact and conclusions of law.

### QUESTION PRESENTED

Do sections 160 and 161 of the Welfare and Institutions Code require, for state hospital care, the physical presence in this state of an incompetent claiming California residence?

### RECORD

Petitioner, John Mauro, is the father of Robert J. Mauro. Both lived in Illinois since 1943. In 1948 Robert was com-

mitted as a mentally ill person to Elgin State Hospital, an Illinois institution. He remained there until 1950 when he was transferred to the Chicago State Hospital. John Mauro came to California in 1958 and during a two weeks' stay here purchased a home in Salinas where he has relatives, with the intention, he testified, to take up residence in California. At that time he established a savings account with a Salinas bank, which account he has since continuously maintained. At the end of the two weeks John returned to Illinois to sell his Illinois business and home. He sold the business in October 1959 and the house in June 1960. He then returned to Salinas where he now resides. After the purchase of the Salinas house in 1958 it was vacant "for a couple of months" and then was rented until about March 1960.

On June 28, 1960, Robert was given a leave of absence from the Chicago State Hospital where he had remained since 1950, and on July 29, 1960, he was granted an absolute discharge therefrom. On July 1 his father brought him to California. Just 16 days after the date of his discharge from Chicago State Hospital, on August 15, 1960, Robert was committed to Agnews State Hospital. He was then 33 years of age.

Dr. Walter Rapaport, Medical Superintendent of Agnews State Hospital, testified that returning Robert to an Illinois institution would not be detrimental to his health.[1] Dr. Rapaport also testified that the Department of Mental Hygiene has a reciprocal agreement with the State of Illinois for the interchange of mentally ill persons who do not have the one year residence required by both Illinois and California for hospitalization and who did have one year of residence in the "responding" state prior to going to the "sending" state.

PHYSICAL PRESENCE IN STATE NECESSARY

It is petitioner's contention that as Robert was a minor (19 or 20 years of age) at the time of his commitment to the Illinois state hospital his residence at all times during his confinement and until his discharge, was that of his father; that because of his mental incompetency his residence would continue to follow the residence of his father, even though he became of age during that period. Petitioner further contends that at the time of Robert's discharge from the Illinois institution, the father's residence was in California, and that

[1]Section 6730 of the Welfare and Institutions Code provides that a patient from a state hospital can only be discharged if the medical superintendent thereof finds that his discharge "will not be detrimental to the public welfare, or injurious to the patient."

sections 160 and 161 do not require that either the father or Robert actually live in California for the period of one year in order that Robert might qualify for care at a California state hospital.

It is the respondents' contention (1) that the right to state hospital care does not depend alone upon residence in the technical sense, but in addition on the person seeking such care actually living within the state for the period of one year and that, therefore, the residence of Robert's father is immaterial, and (2) that in any event if John's residence is material his residence for state hospital purposes also required one year's physical presence in this state, and that John's residence did not commence here until his return to California on July 1, 1960.

Section 160 of the Welfare and Institutions Code requires the Department of Mental Hygiene to ''investigate and examine all nonresident persons who are confined in, admitted, or committed to any state hospital,'' and when found such persons shall be returned to the state in which they have legal residence. To facilitate the prompt and humane return of such persons the department ''may enter into reciprocal agreements with the proper boards, commissions or officers of other states . . . for the mutual exchange or return of such persons confined in . . . any state hospital in one state whose legal residence is in the other, and it may in such reciprocal agreements vary the period of residence as defined in this chapter to meet the requirements or laws of the other states.''

Section 161 provides: *"In determining residence for purposes of being entitled to hospitalization in this State and for purposes of returning patients to the states of their residence, a person who has lived continuously in this State for a period of one year and who has not acquired residence in another state by living continuously therein for at least one year subsequent to his residence in this State shall be deemed to be a resident of this State.* Time spent in a public institution for the care of the mentally ill or mental defectives or on parole or leave of absence therefrom shall not be counted in determining the matter of residence in this or another state.'' (Emphasis added.) Then follows a provision that residence in this or another state shall not be lost by reason of military service, and that the residence of minor children during the military service period shall be determined in accordance with the residence of the children.

As pointed out in an opinion of the attorney general

(5 Ops. Cal. Atty. Gen., p. 162 (1945)), followed by the department thereafter in interpreting the statutes, the language in section 161, above italicized, "suggests, in addition to residence in the technical sense, which would only require a union of act and intent to acquire a residence, a coming to California with the intent to reside here *and* living continuously therein, that is, being physically present during all of the time, or practically all of the time. We cannot use such a technical interpretation of the term 'residence' as will permit a person to come to California, legally establish a residence, and thereafter depart to another State on a temporary basis, maintaining, *as is permitted for certain purposes*, a legal residence in California.

"It must also be borne in mind that no constructive residence is contemplated such as is permitted under the rule or statute which makes the residence of the husband and father the residence of the wife and minor children. (See Government Code Section 244.)"

We agree with the above interpretation of section 161. To entitle one to state hospital care in California he must not only be a legal resident of the state but must have lived continuously in the state for the period of a year prior to his application for hospitalization here.

That the terms "residence" and "resident" may have different meanings under different statutes is well stated in *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239-240 [288 P.2d 497] : "They [the statutes] frequently use 'residence' and 'resident' in the legal meaning of 'domicile' and 'domiciliary,' and at other times in the meaning of factual residence or in still other shades of meaning. (Rest., Conflict of Laws, § 9, com. e; 17 Am.Jur. 'Domicile,' § 9, p. 593.) For example, in our codes 'residence' is used as synonymous with domicile in the following statutes: sections 243 and 244 of the Government Code, giving the basic rules generally regarded as applicable to domicile (*Lowe* v. *Ruhlman,* 67 Cal.App.2d 828, 833 [155 P.2d 671]) ; section 301 of the Probate Code, relating to jurisdiction for the administration of decedents' estates (*Estate of Glassford,* 114 Cal.App.2d 181, 186 [249 P.2d 908, 34 A.L.R.2d 1259]) ; and section 128 of the Civil Code, providing that a divorce must not be granted unless the plaintiff has been 'a resident' of the state for one year (*Ungemach* v. *Ungemach,* 61 Cal.App.2d 29, 36 [142 P.2d 99]). On the other hand, 'nonresident' has a more factual meaning in contemplating an actual, as distinguished from a

constructive or legal residence in the following statutes: section 537 of the Code of Civil Procedure, providing for attachment in a contract action of property of a defendant 'not residing in this State' (*Hanson* v. *Graham,* 82 Cal. 631, 633 [23 P. 56, 7 L.R.A. 127]) ; and section 404 of the Vehicle Code, providing for substitute service on 'a nonresident' in an action arising from the operation of an automobile in this state (*Briggs* v. *Superior Court,* 81 Cal.App.2d 240, 246 [183 P.2d 758]). As stated in the *Briggs* case at page 245: 'Residence, as used in the law, is a most elusive and indefinite term. It has been variously defined. . . . To determine its meaning, it is necessary to consider the purpose of the act.' (See Reese and Green, '*That Elusive Word, "Residence,"*' 6 Vanderbilt L. Rev. 561; 1 Beale, Conflict of Laws, p. 109 et seq.) ''

The administrative interpretation, both of the State of California and the State of Illinois, is that for hospitalization purposes there is added to the requirement of being a legal resident that of actual living in this state for a year. In the reciprocal agreement between the two states is the following: ''For the purpose of this agreement, the term 'legal resident' shall mean any person who has lived continuously within the confines of one state for a period of one year and has not subsequently lived continuously within the confines of the other state for a period of one year or acquired residence which would qualify him for public hospitalization in a state other than the contracting states; provided that time spent in any state public hospitals or institutions for the mentally ill or mentally deficient or on parole or unauthorized absence therefrom shall not be counted in determining length of residence. The residence of a person in either state is to be determined by the actual physical presence of such person in either state and not by the intent of such person.''

 The interpretation of a statute by the officials charged with its administration should be given great weight. (*Nelson* v. *Dean* (1946) 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467] ; *Adoption of Parker* (1948) 31 Cal.2d 608 [191 P.2d 420].)

 Since 1945 section 161 has been amended twice. Neither of the amendments has changed the wording upon which the Attorney General's opinion is based. This is an indication of legislative approval of the construction given the statute by the Attorney General and the department.

The history of section 161 supports the construction given it by the trial court. Political Code section 2191 was the prede-

388

cessor of section 161. In 1923 (Stats. 1923, ch. 85, p. 160) section 2191 was amended by adding a sentence to the portion defining "resident" providing that a minor inmate of the Whittier State School and other named correctional schools should be deemed a resident of California if either one or both parents were residents of California. In 1943 section 161 was amended (Stats. 1943, ch. 481) when jurisdiction of the correctional schools was transferred to the Youth Authority; the sentence determining residence of such a minor by the residence of a parent was deleted.

In 1957 (Stats. 1957, ch. 489) section 161 was amended to provide the paragraph containing the provision above mentioned to the effect that the residence for hospitalization purposes of a minor child of a parent in military service is determined by the residence either of the parent or that of the child, "residence" here being the place of abode of the child rather than its technical legal residence. Thus section 161 and its predecessor section 2191, Political Code, specifically eliminated as to minor inmates of correctional schools, and minor children of parents in military service, any requirement of length of residence of the children in California, but it at all times required that for purposes of hospitalization all other persons, minor or adult, must have the one year physical presence requirement. It was not until Robert came to California with his father that he was physically present here. Furthermore, Robert's residence did not continue to follow that of his father.

■ Generally the rule is that when a minor becomes insane prior to the attainment of majority and continues under the control of the father, the son's domicile changes with that of his father. However, as stated in Restatement, Conflict of Laws, subdivision c, section 40, chapter 2: "c. *Incompetent living with parent.* ■ If a person before coming of age becomes mentally incompetent, so that he is unable to choose a home and he continues to live with his parent, he does not become emancipated upon arriving at majority. If no legal guardian is appointed and he continues to live with the parent, he has the same domicil as that of the parent so long as he remains insane. ■ *If he does not continue to live with the parent, his domicil remains in the place in which he was domiciled at the time of his separation from his parent.*" (Emphasis added.) At the time Robert was separated from his parent, Robert's domicile was Illinois.

■ Moreover, as we have hereinbefore pointed out, the

test under section 161 is not along the question of the incompetent's legal residence but one of whether he is "a person who has lived continuously in this State for a period of one year...."

An additional factor in support of the court's ruling is that the father, John, never gained residence for hospitalization in California until June 1960. ▮▮▮ While residence in the legal sense depends largely upon the intention of the person concerned (see *Murphy* v. *Travelers Ins. Co.* (1949) 92 Cal.App.2d 582 [207 P.2d 595]), the trial court is not necessarily bound by the person's statement of his intention, particularly where his acts contradict his statement. ▮▮▮ Thus, a reasonable inference from the evidence is that petitioner in the two weeks he spent in California, when he purchased a home and established a bank account, did not intend thereby to become a resident immediately, but that his intention was that as soon as he could sell his business and Illinois home he would then become a California resident. This might mean a question of a few days or an indefinite period. Actually it took approximately one and one-half years. Thus, it was not until June 1960 that his intention took effect and he became a citizen of California. ▮▮▮ If we assume that Robert's residence during the time of his confinement in Illinois was that of his father, Robert's residence in California did not commence until both he and his father came to California. Then, he did not need his father's residence to determine his own. He was an adult and free for a few days from control of any state hospital. ▮▮▮ In any event, Robert could not qualify under section 161 as he had not lived for one year in this state before being committed to the California state hospital.

▮▮▮ Petitioner contends that sections 160 and 161 are vague and indefinite in not setting up a standard to determine residence under those sections, thereby granting to the department an invalid delegation of power and denying the persons concerned due process. It should be remembered in this behalf that we are not dealing with a matter of commitment but of transfer after commitment. ▮▮▮ All mentally ill persons in California are subject to commitment to a state hospital, whether residents or not. It is only after commitment that sections 160 and 161 come into play. Moreover, no transfer to another state can occur unless the other state agrees to accept the patient. This is implied in the statute. (*Howard* v. *Overholser*, 130 F.2d 429, 432-433 [76 App.D.C. 166]; see

*In re Petersen* (1958) 51 Cal.2d 177, 185 [331 P.2d 24].) It is for this reason that section 160 authorizes reciprocal agreements.

Section 161 sets up a definite standard for determining residence for the purposes of it and section 160, namely, "a person who has lived continuously in this State for a period of one year and who has not acquired residence in another state by living continuously therein for at least one year subsequent to his residence in this State. . . ." The standard is provided and the statute is not vague nor indefinite.

Petitioner also contends that sections 160 and 161 are indefinite and vague because he claims that they do not set up standards for determining residence in another state but only for determining California residence. However, "residence" in a particular state depends upon the laws of that state. California could not prescribe what shall constitute "residence" in another state. In the very nature of the matter the term "residence" as applied to a person in another state imports "residence" as determined by the laws of that state. "Residence" in another state, thus has a definite meaning. It would be practically impossible for the California Legislature to set up any other standard than the word "residence" itself as otherwise it would have to set forth the requirements for "residence" in the 49 other states of the Union, from any one of which it is possible that an incompetent may come to California. Actually, if a state from which the incompetent has come refuses to recognize him as having "residence" in that state, California has no way of compelling that state to receive him, and the incompetent would continue to receive care in the California institution. After California has determined that the person seeking state hospital care has not been in this state a year, the real determination of whether his "residence" is in the state from which he came, is made by that state.

The order and judgment are affirmed.

Sullivan, J., and Molinari, J., concurred.