[Civ. No. 50643. Second Dist., Div. Two. Oct. 5, 1977.]

In re RICHARD DEAN TEETER, a Mentally Retarded Person.
THE PEOPLE, Plaintiff and Appellant, v.
RICHARD DEAN TEETER, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, N. Eugene Hill and John Klee, Jr., Assistant Attorneys General, Anne S. Pressman and Barbara M. Motz, Deputy Attorneys General, for Plaintiff and Appellant.

Dorothy L. Schechter, County Counsel, William A. Waters, Assistant County Counsel, and Richard E. Erwin, Public Defender, for Defendant and Respondent.

**OPINION**

FLEMING, J.—This cause presents the question of proper forum for filing a petition to commit a presently hospitalized mentally retarded person under Welfare and Institutions Code section 6500 et seq. (All statutory citations are to Welf. & Inst. Code.) A number of such petitions were filed in Ventura County against inmates of Camarillo State Hospital, one of whom was respondent Teeter. Prior to their commitment to Camarillo State Hospital all such inmates originally resided in counties other than Ventura. The precise question is whether under section 6502 the petition for respondent's commitment as a mentally-

retarded person should have been filed in Los Angeles County rather than in Ventura County. Section 6502 provides: "A petition for the commitment of a mentally retarded person to the State Department of Health for placement in a state hospital may be filed in the superior court of the county in which such person resides, by any of the following persons . . . ."

Respondent Teeter was committed to a mental hospital, Pacific State Hospital, in 1947 at the age of 16. At that time he resided in Los Angeles County with his parents. In 1962 he was transferred to Atascadero State Hospital, and in 1971 transferred to Camarillo State Hospital. He has always been a borderline mentally retarded person with an IQ of 85, who exhibits sociopathic tendencies such as stealing cars and sexually molesting young children. At the time the instant petition was filed he was 45 years old. Respondent had previously filed four petitions for habeas corpus seeking release from Camarillo State Hospital. In court respondent was asked whether he would remain in Ventura County if released from the hospital; his answers were not determinative of anything—which is hardly surprising, since he has been institutionalized as a mentally retarded person for 30 years, has no prospects of release, and has no real understanding of what he would do to maintain himself, as his testimony made obvious. Respondent's residence for purposes of billing the costs of his court appearances has been Los Angeles County (§ 5110). His parents still live in East Los Angeles, and he has been under the supervision of the Los Angeles Regional Center for purposes of follow-up and placement control.

The superior court dismissed the petition, finding that mere residence in a state hospital is insufficient to make respondent a resident of Ventura County, that respondent is not in fact a resident of Ventura County, and that therefore the court lacked jurisdiction over the petition. The Attorney General's appeal is opposed by the public defender and by the County Counsel of Ventura.

The parties have extensively briefed the technical legal meaning of the concepts of residence and domicile in other areas of law, and have also dealt with the extent to which a mentally incompetent person can form an intent to change his residence. It has been said that residence is an elusive and indefinite term and that to determine its meaning in a given context it is necessary to consider the purpose of the statute. (*Mauro* v. *Dept. of Mental Hygiene* (1962) 207 Cal.App.2d 381, 387 [24 Cal.Rptr.

505].) With respect to the statutory scheme here, factors that favor filing the petition in the county where the mentally retarded person is institutionalized include the greater convenience of transporting respondent and institutional witnesses to the hearing and the greater accessibility of records. On the other hand, factors that favor filing in the county of residence include the greater accessibility of relatives and friends, the probability that respondent will remain under the jurisdiction of his local regional center, as in fact respondent remains under the jurisdiction of the Los Angeles Regional Center, and reduction in burden on the county of institutionalization. For example, it can be expected that numerous petitions will be filed against persons institutionalized at Camarillo State Hospital. Many such persons originate from counties other than Ventura.[1]

Under the Welfare and Institutions Code costs of commitment are a charge on the county where a person is committed, normally the county of his residence. (See §§ 5110, 6508, 6717.) For example, a mentally deficient child committed to the Sonoma Home from San Joaquin County is treated as a San Joaquin County resident, and the latter county remains liable for the costs of care. (4 Ops.Cal.Atty.Gen. 311.) Throughout the code the Legislature has often distinguished county of residence from county of institutional location. For example, section 7254, dealing with sterilization, provides for a petition in either county. Section 5275 provides for habeas corpus writs to be heard in the county where the institution is located. Conservatorships for gravely disabled persons, which are comparable to commitments of mentally retarded persons in that both procedures deal with persons who are not totally incompetent and both require annual review (§§ 5361, 6500.1), are effected in the county of residence, which retains continuing jurisdiction over the proceeding even though the ward may be institutionalized elsewhere (§§ 5352, 5361).

The interpretation of a statute by officials charged with its administration should be given great weight. (*Mauro, supra,* p. 387.) However, that rule is not particularly helpful here, because the Attorney General (appellant) is not the sole party charged with administration of section

---

[1] If all filings took place in Ventura County, the burden on that county would be heavy because filings would far exceed the normal percentage of mentally retarded persons filed against on a population basis throughout the state. It might also become a practical necessity to transfer jurisdiction over those persons to the Ventura County Regional Center, which would similarly disproportionately burden that center.

6502.[2] ■ The court in *Mauro* pointed out that for most purposes the residence of an incompetent child is that of his parents and if he is separated thereafter from his parents his residence remains the place of separation. (*Mauro* v. *Dept. of Mental Hygiene, supra,* 207 Cal.App.2d at p. 388, citing Rest., Conflict of Laws, ch. 2, § 40, com. c.)[3] The issue here is further complicated in that we are not dealing with an incompetent but with a mentally retarded person, some of whom are no doubt competent to form an intent about residence, which intent would then legally fix the place of residence.[4] (*Mauro, supra,* at p. 389; *Murphy* v. *Travelers Ins. Co.* (1949) 92 Cal.App.2d 582, 587 [207 P.2d 595].) Respondent, however, has no demonstrable intent with respect to residence. ■ As often happens in commitment proceedings for the mentally disturbed, the patient's intent is unascertainable, and therefore it becomes necessary to use objective factors to determine residence.[5]

We conclude as follows:

■ 1. The question of the proper county to file a commitment petition under section 6502 is one of venue and not jurisdiction, in that the language of the statute is not mandatory but merely provides that the petition "may" be filed in the county of residence.[6] (§ 6502.) Accordingly, dismissal of the petition for lack of jurisdiction was improper.

---

[2]The statute enumerates several persons who may file commitment petitions thereunder, including parents, guardians, Department of Corrections personnel, or other persons designated by the courts. (§ 6502.)

[3] " 'If a person before coming of age becomes mentally incompetent, so that he is unable to choose a home and he continues to live with his parent, he does not become emancipated upon arriving at majority. If no legal guardian is appointed and he continues to live with his parent, he has the same domicil as that of the parent so long as he remains insane. *If he does not continue to live with the parent, his domicil remains in the place in which he was domiciled at the time of his separation from his parent.* '" (Italics in original.)

[4]The Restatement Second Conflict of Law, at section 23, provides that a mentally deficient person may acquire a domicile if he has sufficient mental capacity to choose a home. The rationale that an adjudicated incompetent may change his domicile was adopted in *Estate of Phillips* (1969) 269 Cal.App.2d 656, 665 [75 Cal.Rptr. 301].

[5]For a discussion of subjective and objective factors relevant to ascertain intent to establish a domicil or residence, see 2 Witkin, California Procedure (2d ed. 1970) Actions, sections 445-447, page 1273 et seq.

[6]Further, even if the language of the statute were mandatory, the problem would not be one of lack of jurisdiction in its fundamental sense of power over the parties or subject matter jurisdiction, but would be a question of statutory venue. (See *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 121, 122 [101 Cal.Rptr. 745, 496 P.2d 817].)

2. The court was required to make a finding of residence under section 6502 for the purposes of determining a motion for change of venue.

3. Respondent's presence in Ventura County and the fact of institutional location therein are not conclusive.

4. In a given case if no reasoned factual finding is practicable, the court may take into consideration the convenience or inconvenience of the forum in making its determination of residence. For example, if in the cause at bench the court found proof of residence inconclusive, the court might properly have found Ventura County an inconvenient forum because the place of last unconfined residence was Los Angeles County, the Regional Center there has jurisdiction over respondent, respondent's parents live in East Los Angeles, respondent has no desire to remain at Camarillo (as evidenced by his four habeas corpus petitions), and respondent showed no demonstrable intent to make a home anywhere.

5. At bench, although respondent desired to dismiss the petition, he may not wish to request a change of venue. Accordingly, respondent may now elect whether or not to press his motion for change of venue.

The judgment dismissing the petition is reversed. The cause is remanded to the trial court with instructions to treat respondent's motion as one for change of venue and to proceed further in accordance with this opinion.

Roth, P. J., and Compton, J., concurred.