OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 90-591 |
| of | : | |
| | : | |
| JOHN K. VAN DE KAMP | : | JULY 26, 1990 |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |

_____


      We have reinstated the Application PEDRO PALLAN has filed for leave to sue THE COMPTON UNIFIED SCHOOL DISTRICT, TED D. KIMBROUGH (INDIVIDUALLY AND AS SUPERINTENDENT OF THE DISTRICT) AND LARRY SMITH in quo warranto in the name of the People of the State of California pursuant to the provisions of sections 803-810 of the Code of Civil Procedure. (See, 73 Ops.Cal.Atty.Gen. 109 (1990).) The purpose of the suit is to test Mr. Smith's right to hold the office of Personnel Commissioner on the District's Personnel Commission in lieu of Mr. Pallan. Dispute arises upon Mr. Pallan's contention that the Board of Trustees of the District erroneously believed him not to be a resident of the District and thereupon improperly considered a vacancy to exist in the position he occupied as Personnel Commissioner and chose Mr. Smith to fill it in his stead.

CONCLUSION

      It is determined that leave to sue should be GRANTED.

STATEMENT OF MATERIAL FACTS[1]

Mr. Pallan was appointed by the Board of Trustees of the Compton Unified School District to the District's Personnel Commission in December, 1984. (Cf., Ed. Code, § 45245.) He was thereafter reappointed to the position in December, 1987, for its three year term to expire at the end of November, 1990. (Cf., Ed. Code, § 45247.) However, in April 1989, the Board of Trustees determined that Mr. Pallan was not a "resident" of the District and was therefore ineligible to serve on its Personnel Commission. It thus considered a vacancy to exist in the position under section 45244 of the Education Code and section 1770, subdivision (e) of the Government Code, and appointed Mr. Smith to fill the remainder of the three year term. (Cf., Ed. Code, § 45248.)

Mr. Pallan owns a building in the City of Compton in which his business and several apartments above it are located. He has lived for some time in one of those apartments. Mr. Pallan also owns a house in the City of South Gate where his wife resides. Section 45244 of the Education Code provides that to be eligible for appointment or reappointment to the Personnel Commission of a school district, a person must be "a registered voter and resident within the territorial jurisdiction of the ... district...." (Ed. Code, § 45244.) The building owned by Mr. Pallan in the City of Compton lies within the territorial jurisdiction of the Compton Unified School District; the house in the City of South Gate does not.

On April 4, 1989 Mr. Pallan was told by Superintendent Kimbrough of the District that based on information it received, the District's Board of Trustees had determined that he did not meet the requisite qualifications to serve on the District's Personnel Commission because he was a resident of South Gate and not of the District as required by law (cf., Ed Code, § 45244). Mr. Pallan challenged the Board's position and its conclusion that he was not a resident of the District. The Board requested that he submit an affidavit "indicating where he lives, how long he has lived there and where he has lived since the time he was appointed to the Personnel Commission." Mr. Pallan agreed to submit such an affidavit but only on the condition that "the District agree[] in advance to stop its interference with his carrying out of his duties as a Personnel Commissioner."

---

[1]The Statement of Facts is compiled from the assertions of the each of parties in their filings, which have either been admitted or not controverted by the other. The filings in this action consist of the following documents: The Application For Leave To Sue filed by Mr. Pallan on August 9, 1989; the Opposition thereto filed by the proposed Defendants on August 31, 1989; and the Reply to the latter filed by Mr. Pallan on September 22, 1989. In addition, by letter of October 13, 1989, this Office requested further information from both parties relating to a suit Mr. Pallan had filed against the Compton Unified School District and Mr. Ted D. Kimbrough (Individually and as Superintendent of the District) in the Superior Court of Los Angeles County (# C 730286), which appeared to raise identical issues as the proposed quo warranto action. In our letter we also sought clarification of certain matters relating to Mr. Pallan's residency. Responses were received on October 23rd and 27th, including copies of the pleadings in the civil action, and thereafter this matter was taken under consideration.

It should be noted that these documents were filed in connection with a proposed quo warranto action that Mr. Pallan sought last year. At the time we denied leave to sue because of the pendency of the court action. (73 Ops.Cal.Atty.Gen. 109, *supra*.) But we did so provisionally without prejudice to reinstatement of the Application if that other action terminated without resolving the similar issues. (*Ibid.*) At Mr. Pallan's request the action was subsequently dismissed on May 22nd and we reinstated his Application for Leave To Sue In Quo Warranto.

Mr. Pallan never did submit the requested affidavit. The Board then concluded that facts existed which caused a vacancy in the position he occupied on the Personnel Commission (cf., Ed. Code, § 45244; Gov. Code, § 1770, subd. (e)) and at its meeting on June 13th considered the selection of an appointee to serve the remainder of his unexpired term (cf., Ed. Code, § 45248). The matter was tabled and rescheduled for discussion at the Board's meeting on June 27th. At that time Mr. Pallan challenged the Board's conclusion that a vacancy existed on the Personnel Commission, and reiterated that he was a resident of the Compton Unified School District. He also informed the Board that he had not abdicated his position and intended to serve the remainder of his term. The Board of Trustees was not persuaded and it announced that Mr. Smith was to be its new appointee to the Personnel Commission and that it would formally vote on his appointment at its next meeting on July 11th. At its next meeting on the evening of July 11th the Board formally appointed proposed defendant Smith to serve the remainder of Mr. Pallan's term. (Cf., Ed. Code, § 45248.)

## CONTENTIONS OF THE PROSPECTIVE PARTIES

The dispute of the prospective parties centers around the legality of the District's considering a vacancy to exist in Mr. Pallan's position on the Personnel Commission and appointing Mr. Smith to fill it.

Mr. Pallan contends that since 1985 he has been, and is now, a resident of the Compton Unified School District. In support of his position he declares under penalty of perjury in his Statement of Facts that (a) he owns a building in the City of Compton where he operates a business and lives in one of the apartments located above it, and that (b) he established that apartment as his residence in January 1985 because (i) he wished to satisfy the formal residency requirements for the position of Commissioner on the District's Personnel Commission, and (ii) because he found it to be more convenient "as a base from which [he could] attend meetings during the day or after work, shower and change when necessary and socialize with ease and comfort with [his] business and social contacts." Mr. Pallan also states (a) that he spends most of his non-working hours at this residence in Compton; (b) that his professional, personal and social life revolve around the Compton area; (c) that his wife resides with him "on occasion" at the Compton residence; (d) that he receives mail at the Compton address; (e) that the Compton address is the one shown on his driver's license; (f) that his tax returns indicate his Compton address; and (g) that he is registered to vote in the City of Compton.

However, Mr. Pallan does admit that he also has a home in South Gate where his wife lives and which is her residence. He also admits that he claims his homeowner's exemption for tax purposes on that property.

Proposed defendants contend that they properly found a vacancy to exist in Mr. Pallan's position on the Personnel Commission, and that it properly appointed a successor to fill it. They contend that Mr. Pallan was not qualified to serve as Commissioner because he did not reside within the territorial jurisdiction of the District as required by section 45244 of the Education Code. Proposed defendants also maintain that Mr. Pallan never provided them any verification showing that he was in fact a resident of the District, despite being given ample opportunity to do so.

## CRITERIA FOR QUO WARRANTO

Section 803 of the Code of Civil Procedure provides that the Attorney General may authorize a private party, "to bring an action in the name of the people ... against any person who usurps, intrudes into, or unlawfully exercises any public office...." The action authorized is "in the nature of quo warranto" (*International Assn. of Fire Fighters* v. *City of Oakland* (1985) 174 Cal.App.3d 687, 693 fn. 10) and its purpose is to resolve the question of a person's title or right to

a public office. (Cf., *Wheeler* v. *Donnell* (1896) 110 Cal. 655, 658; *Citizens Utilities Co.* v. *Superior Court* (1976) 56 Cal.App.3d 399, 406; *Housing Authority* v. *City Council* (1962) 208 Cal.App.2d 599, 603; Black's *Law Dictionary* (Rev. 4th ed. 1968) at p. 1417; see generally, *International Assn. of Fire Fighters* v. *City of Oakland*, *supra*, at 693-698.)

The test for our review of applications for leave to sue in quo warranto was recently summarized as follows:

"In reviewing applications for leave to sue in quo warranto, this Office addresses three fundamental questions:

"1. Is quo warranto the proper remedy to resolve the issues which are presented?

"2. Has the proposed relator raised a substantial question of law or fact?

"3. Would the public interest be served by judicial resolution of the question?

"All three questions must be resolved in the affirmative in order for this office to grant leave to sue." (72 Ops.Cal.Atty.Gen. 15, 20 (1989); see also, 67 Ops.Cal.Atty.Gen. 151, 153-154, 161 (1984).)

We proceed to discuss proposed Relator Pallan's Application in context of these criteria.

DISCUSSION

1.    Is Quo Warranto The Proper Remedy?

Applications to sue in quo warranto have usually involved a direct challenge to the right of a current officeholder to hold a particular office, usually on the ground that he or she failed to meet, or has failed to continue to meet, one or more of the required qualifications for the office, such as one imposing a residency requirement for it. (See e.g., 72 Ops.Cal.Atty.Gen. 63, *supra*; 72 Ops.Cal.Atty.Gen. 15, *supra*; 72 Ops.Cal.Atty.Gen. 8, *supra*; 35 Ops.Cal.Atty.Gen. 198 (1960).) However, the challenge here, unlike those we have had occasion to address before, does not center around the qualifications of Mr. Smith to hold office, but rather those of Mr. Pallan, the proposed Relator. As indicated in our exposition of the contentions of the parties, both Mr. Pallan and the proposed defendants frame the issue as one of whether the Board of Trustees properly found that a vacancy existed in his position on the Personnel Commission and then appointed Mr. Smith to fill it. Central to that matter, as seen by both parties, is the question of whether Mr. Pallan was and is a "resident" of the Compton Unified School District, and the thrust of both their submissions has been directed to that issue.

The purpose of the proposed quo warranto action would be to test Mr. Smith's right to hold the position of Personnel Commissioner. (Cf., Gov. Code, § 803; *Housing Authority* v. *City Council*, *supra*, 208 Cal.App.2d 599, 603.) The Application does challenge proposed defendant Smith's title and right to occupy that office. While Mr. Pallan does not contend that Mr. Smith is not qualified to be a member of the Personnel Commission, he does challenge the validity of Mr. Smith's appointment to that office. That appointment is valid only if there was a vacancy to be filled. Without one, the Board would have had no authority to appoint Mr. Smith to the office and its action in making the appointment would be void.

As indicated, quo warranto is available to resolve the question of title or right to a public office. Section 803 of the Code of Civil Procedure specifically authorizes an action against any person who "usurps, intrudes into, or unlawfully exercises any public office...." The action "may be maintained against the incumbent ... irrespective of whether the relator is entitled to the office if the incumbent is not entitled thereto [citation] ... [because] the relator ... acts merely as an informant [citations] and the action is brought in the name of the People of the State of California...." (35 Ops.Cal.Atty.Gen. 198, 199, *supra*.) The position of Personnel Commissioner on a school district's Personnel Commission is a public office. (71 Ops.Cal.Atty.Gen. 39, 40, 42 (1988).) Thus, insofar as Mr. Pallan's Application seeks a determination of the right of proposed defendant Smith to serve as a Commissioner on the Personnel Commission of the Compton Unified School District, the action he seeks to bring is one authorized by section 803 of the Code of Civil Procedure.

In *Klose* v. *Superior Court* (1950) 96 Cal.App.2d 913, the court viewed an early Supreme Court case to hold that

> "where [an] appointing power considers a vacancy in office to exist, it may appoint a successor, without proceedings to declare the vacancy to exist, and that when it does so appoint[,] the official succeeded may by quo warranto question whether there was any vacancy." (*Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 917 referring to *People* v. *Brite* (1880) 55 Cal. 79, 80; see also *People* v. *Flemming* (1893) 100 Cal. 537, 541; 30 Ops.Cal.Atty.Gen. 6, 10 (1957).)

In contending that he has always met the legal residency requirements for service on the school district's Personnel Commission, Mr. Pallan has framed the issue of whether a vacancy ever in fact existed in the position that he occupied. Under the above authority, quo warranto would be an appropriate action to challenge whether there was a vacancy in his position for the Board to fill.

### 2. Are There Substantial Issues Of Law or Fact To Be Resolved?

The second criterion to test an Application for leave to sue in quo warranto is whether the proposed relator has raised substantial questions of law or fact. We believe the Application contains a substantial question of law and a substantial question of fact that warrant judicial resolution.

The question of law is whether section 45244 of the Education Code, which sets forth the qualifications for the office, requires a Personnel Commissioner to maintain continued residence within his school district after his or her appointment or reappointment to a Personnel Commission. As we shall see, resolution of the question is important because the exact demand of the section will tell in turn whether a vacancy may have come to exist in Mr. Pallan's position under section 1770, subdivision (e) of the Government Code if he did not continue to reside in the Compton Unified School District after his reappointment to the Personnel Commission in December, 1987. Then that points to the question of fact, or more properly to the mixed one of law and fact, involving Mr. Pallan's residence: Was he then, and has he continued to be, a resident of the Compton Unified School District?[2]

_____

[2]It should be noted that the Application may also present an interesting twist on the usual residency contention. Usually the question is whether the proposed defendant who is holding the challenged office has moved <u>out</u> of the area in which local residency is required in order to hold the office. Here the question may well be whether Mr. Pallan ever moved <u>into</u> the Compton Unified School District, or at least was a resident of it when he was reappointed to the Personnel

A.  Question of Law - Section 45244's Residency Requirement.

Sections 45240 and 45243 of the Education Code provide for the appointment of a Personnel Commission of either three or five members to oversee the operation of the merit system established for employees of a school district.  (Cf., 71 Ops.Cal.Atty.Gen. 39, 41, *supra*; 56 Ops.Cal.Atty.Gen. 421, 424 (1973); 48 Ops.Cal.Atty.Gen. 64, 70 (1966).)  The Commission, inter alia, prescribes "such rules as may be necessary to insure the efficiency of the service and the selection and retention of employees on a basis of merit and fitness" (Ed. Code, § 45260, subd. (a)), and entertains appeals from employees' suspensions, demotions or dismissals (*id.*, § 45305).  (Cf., *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 143; 73 Ops.Cal.Atty.Gen. 69, 70 (1990); 71 Ops.Cal.Atty.Gen., *supra*.)

In a school district that has a three-member personnel commission, as does the Compton Unified School District, one member is appointed by the governing board, one is appointed by it upon nomination by the district's classified employees, and those two members in turn appoint the third member. (Ed. Code, § 45245.)  Subsequent to the initial appointments of Commissioners in a newly established merit system, the terms of office of school districts' personnel commissioners are for three years, "commencing at noon the first day of December."  (§ 45247.)

Section 45248, subdivision (a) provides that "[a]ppointment to vacancies occurring subsequent to the initial appointment shall be made by the original appointing authority either for a new full term or to fill an unexpired term."  Mr. Pallan was appointed Personnel Commissioner by the governing board of the District for a three year term commencing December 1, 1987, and as his appointing power it was that body that was authorized by section 45248(a) to fill any vacancies in that office.

Section 1770 of the Government Code describes various ways in which public offices become vacant.  Pertinent herein, subdivision (e) provides:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . .

---

Commission in December 1987.  If he was not a resident of the District at that time, then the question of his continuing residency thereafter would then of course be moot and need not be answered:  Since section 45244 clearly requires Mr. Pallan to have been a resident of the District in order to be reappointed in December 1987, if he was not a resident of the District at that time, his reappointment would have been void. (Cf., *Bowring* v. *Dominguez* (1935) 3 Cal.2d 167, 169; 26 Ops.Cal.Atty.Gen. 12, 13, 14 (1955) ["the appointment was void *ab initio*."] 23 Ops.Cal.Atty.Gen. 43, 46 (1954) ["The .. appointment of an ineligible person to office is a nullity"]; 13 Ops.Cal.Atty.Gen. 127, 128 (1949).)

Mr. Pallan asserts that he has been a resident of Compton since January, 1985.  While it may thus be that the factual predicates to support his residency there may not have changed since his reappointment in December, 1987, we cannot say from the presentations whether that is actually the case.  His status may well have changed after the reappointment, thus presenting the usual quo warranto residency issue.  In addition, it is not exactly clear as to what point in time challenge is made to Mr. Pallan's tenure because of his want of residency in the District.  We therefore discuss the issue of whether section 45244 requires continued residency because it may be viable in the factual situation that will have to be proven.

"(e) His or her [i.e., the incumbent's] <u>ceasing to be an inhabitant</u> of the state, or <u>if the office be local and one for which local residence is required by law, of the district</u>, county, or city <u>for which the officer was chosen or appointed</u>...."

Under the section there are thus two conditions that must obtain in order for a vacancy to occur in a local public office: one, there must be a law requiring local residence for the office, and two, the officer must have ceased to be an inhabitant of the area for which that local residency is required. (Cf., 35 Ops.Cal.Atty.Gen. 198, 199, *supra*.) We shall discuss the nuances of the second condition in connection with our examination of the issue of Mr. Pallan's "residence", and so for now we turn our attention to the first condition, a law requiring local residence.

Section 45244 prescribes the qualifications for the office of Personnel Commissioner as follows:

"<u>To be eligible for appointment or reappointment to the commission a person shall (a) be a registered voter and resident within the territorial jurisdiction of the school district</u> and (b) be a known adherent to the principle of the merit system. No member of the governing board of any school district or a county board of education shall be eligible for appointment, reappointment, or continuance as a member of the commission. During his or her term of service, a member of the commission shall not be an employee of the school district." (Emphasis added.)

Does this section require a Personnel Commissioner to maintain continuous residence in a school district during incumbency in order to serve in the position? If it does, then under section 1770 subdivision (c), a vacancy in the position would arise if the incumbent ceases to be a resident.

Although the first sentence of section 45244 speaks in terms of eligibility for taking office, we have concluded that similar language setting forth a prior residency requirement for other public offices, also requires that the residency be maintained continuously throughout the term of office as well, and that remains a continuing qualification for holding the office in question. (Cf., 66 Ops.Cal.Atty.Gen. 229, 230 fn. 3 (1983) [Gov. Code, § 71140 - marshals]; 59 Ops.Cal.Atty.Gen. 627, 629 (1976) [Gov. Code, § 71140 -justice court judges]; 58 Ops.Cal.Atty.Gen. 888, 891 (1975) [Ed. Code, §§ 1161, 3254 - school district board of trustees]; 35 Ops.Cal.Atty.Gen. 198, 200-202, *supra* [Gov. Code, § 36502 - city councilman].) Thus, we would have no question that <u>if they stood alone</u>, the residency requirement for appointment or reappointment to the office of Personnel Commissioner that appears in the first sentence of section 45244 would also remain a continuing condition of eligibility for the office, and would have to be maintained throughout a term in order to for a Personnel Commissioner to retain the right to hold it.

However, unlike the sections of law imposing eligibility requirements for taking office that we addressed in our former Opinions, section 45244 does not stop with a single sentence defining eligibility for appointment or reappointment. As quoted above, the paragraph defining the qualifications for membership on personnel commissions contains two additional sentences which further restrict membership, and those restrictions specifically deal with eligibility to serve during incumbency. The second sentence of the section provides that no member of a governing board of a school district or a county board of education may "<u>be eligible for</u> appointment, reappointment, or <u>continuance as a member of [a personnel] commission</u>", and the third sentence of the section provides that "[d]<u>uring his or her term of service</u>, a member ... [may] not be an employee of the school district."

Our research has disclosed no case interpreting section 45244. Read literally, the first sentence establishes eligibility requirements (of residence within a district and adherence to the

principle of the merit system) only "for appointment or reappointment to a [Personnel Commission]." It does not state that those eligibility requirements also apply to continued membership on the Commission throughout the term of office. Whether such is to be implied presents a substantial question of law. (Cf., 35 Ops.Cal.Atty.Gen. 198, 202, *supra* [leave to sue in quo warranto granted for court to resolve the question of whether section 36502 of the Government Code required a councilman to retain residence in the city during his incumbency].) Tenable arguments can be made on both sides of the issue.

On the one hand, it can be argued that by making the eligibility requirements (of residency and adherence to the principle of the merit system) apply to one's reappointment as well as to one's original appointment as Personnel Commissioner, the Legislature intended for them to apply throughout the term of office. Surely, little purpose would be served by requiring district residence (or adherence to the principle of the merit system) only at the time of one's appointment or reappointment and not for the time in between.

A similar issue was presented in 35 Ops.Cal.Atty.Gen. 198, *supra*, in connection with the meaning of the residency requirement for city councilmen found in section 36502 of the Government Code. That section provided "A person is not eligible to hold office as councilman ... unless he is at the time of assuming such office an elector of the city, and has resided in the city for the year preceding his election." Question arose as to whether the section imposed a continuing eligibility requirement on holding office. We said:

> "It can be strongly argued that to conclude that a councilman has to be an elector only on the date he assumes office, or a resident only for the year preceding the election would be a rule without purpose or reason. Such an interpretation would mean that a man need not be an elector ... during the time he serves in office, but only at the instant he assumes office. While section 36502 ... expressly mentions residence only in regard to the year preceding the election, it would not encourage responsible city government to allow a successful candidate to move from the city as soon as he is elected and still remain a member of the city council." (35 Ops.Cal.Atty.Gen. *supra*, at 201; emphases added.)

Thus here too it could also be argued that the responsible operation of a school district's merit system would not be encouraged if a person were allowed to remain a member of the Personnel Commission which oversees it, if he or she does not live in the district and with that nexus, have an interest in the efficacy of the school system. And the mischief stemming from such an interpretation of section 45244 is even more pronounced where the second requirement for appointment is concerned, for certainly it could not encourage the responsible operation of the merit system of a school district at all if a member of the Personnel Commission which oversees it is permitted to renounce his or her adherence to its principles after appointment.

But there is argument for the other side of the question as well. Unlike section 36502, section 45244 does contain additional sentences which impose additional eligibility requirements on the office of Personnel Commissioner, and they refer not only to the time of one's appointment or reappointment but also to the period of the appointee's "continuance as a member of the commission" and "[d]uring his or her term of service." It could thus well be argued that had the Legislature intended the eligibility requirements of the first sentence of the section to apply throughout an appointee's incumbency on a Personnel Commission, it would have used language to express that intention as it did in the next two sentences of the section. In other words, an opposing argument could be made that inasmuch as the Legislature specifically addressed the matter of disqualification from office during the incumbency of a Personnel Commissioner in the second and third sentences of the section, but not in the first, it did not intend the residency requirements

of the first sentence to apply during a term of service, but only at appointment and on reappointment. (Cf., *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236, 238; *People* v. *Moore* (1986) 178 Cal.App.3d 898, 903; *Board of Trustees* v. *Judge* (1975 50 Cal.App.3d 920, 927; *In re Karpf* (1970) 10 Cal.App.3d 355, 365; *Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95; 64 Ops.Cal.Atty.Gen. 455, 458 (1981).)[3]

Again, we have found no case interpreting whether section 45244 imposes a requirement of continuing residency within the school district during the incumbency of a Personnel Commissioner. Resolution of the matter may be crucial to the proposed action, for on it may turn whether a vacancy could have arisen in Mr. Pallan's position on the Personnel Commission under section 1770 subdivision (c) of the Government Code, for the District to fill with Mr. Smith. (See also, fn. 2, ante.) The office in question is local, and so if section 45244 does impose a requirement that members of a school district's Personnel Commission must live within the territorial jurisdiction of the district throughout their incumbency, it would be one "for which local residence is required by law" throughout a term. Pursuant to subdivision (e) of section 1770 then, if Mr. Pallan ceased to be a "resident" of the district, the office he held would have become vacant by operation of law and without any action of the school board. (Cf., *Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 971; 59 Ops.Cal.Atty.Gen. 627, 629, *supra*; 58 Ops.Cal.Atty.Gen. 888, 891, *supra*; 47 Ops.Cal.Atty.Gen. 36, 37, *supra*.)[4]

Without passing on the issue (cf., 72 Ops.Cal.Atty.Gen. 8, 9, *supra*; 25 Ops.Cal.Atty.Gen. 332, 341, (1955); 19 Ops.Cal.Atty.Gen. 87, 89 (1952)), we believe a substantial question of law is thus presented that requires judicial resolution: Does section 45244 of the Education Code impose a continuing residency requirement for Personnel Commissioners to reside within their school districts, so as to cause a vacancy in office to arise by operation of that section in conjunction with Government Code section 1770, subdivision (e), if a Personnel

---

[3]It should be noted that this is similar to an argument that we acknowledged could be made with respect to Government Code section 36502 in the aforementioned 35 Ops.Cal.Atty.Gen. 198, *supra*. The argument went thus: "The Legislature could have expressly provided for residence during incumbency had that been intended. Nowhere is it specifically stated that city councilmen must be residents and electors of the city continuously during their term of office, whereas certain statutes pertaining to other public offices do expressly provide for residence requirements during the term of office (e.g., Gov. Code §§ 25041, 1060, 1061, 69502, 15601 and 15602)." (35 Ops.Cal.Atty.Gen., *supra*, at 201.)

[4]It is suggested that section 1770, subdivision (e), does not apply to Personnel Commissioners because it only applies to school officials that are explicitly mentioned in section 5090 of the Education Code. That section states, in pertinent part, that "Vacancies on school district governing boards or community college district boards are caused by any of the events specified in section 1770 of the Government Code." It is true that personnel commission members are not within the statutory definition of "governing board" set forth in section 78 of the Education Code, and that there is no provision in section 45248 of that Code relating to vacancies on personnel commissions, which makes section 1770 applicable to them. But it is incorrect to therefore conclude that section 1770 does not apply to personnel commissions. The section is general ("An office becomes vacant....") and applies generally to all public offices. (Cf., 69 Ops.Cal.Atty.Gen. 290, 293 (1986) [The indefinite article, "an", indicates "an indiscriminate and broad coverage...."].) To conclude that the statutory scheme defining a particular office must specifically incorporate the provisions of section 1770 negates that general application.

Commissioner is not so residing. This is the question of law that the proposed quo warranto action would address.

### B. Question of Fact - Mr. Pallan's Residence.

The next question of course, and what could be the crux of the entire matter, is that of Mr. Pallan's residence, for on it will turn whether a vacancy did in fact exist for proposed defendants to fill with Mr. Smith's appointment. There are actually two points in time when his residency must be tested. The first, as noted (fn. 2, *ante*), is when he was reappointed to the Personnel Commission on December 1, 1987. If Mr. Pallan was not a resident within the territorial jurisdiction of the Compton Unified School District at that time, as section 45244 undeniably requires that he have been, his reappointment itself would have been void, and this matter would end there. But then thereafter, if the foregoing issue of law (i.e., whether section 45244 requires a Personnel Commissioner to continuously reside in a school district throughout his or her term of office) is resolved in the affirmative, then the question of whether Mr. Pallan continued to be a resident of the District would arise. As mentioned, if it was found that he was not a resident of the District during his term of office, section 45244 in conjunction with section 1770(e) would have caused an automatic vacancy to arise in his position for the Board to fill. On the other hand, if he was a resident of the district, there would have been no vacancy in his office, and the Board's action in filling the position would be void, with Mr. Smith's tenure appropriately challenged.

The determination of whether a sufficient set of facts has arisen to cause a vacancy to exist on a school district Personnel Commission lies in the first instance with the appointing power. (Cf., Ed. Code, § 45248; *People* v. *Brite*, *supra*, 55 Cal. at 80; *Varela* v. *Board of Police Commissioners* (1951) 107 Cal.App.2d 816, 820; *Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 917-918.) In this case that would be the governing board of the Compton Unified School District, which initially appointed Mr. Pallan. (Ed. Code, §§ 45245, 45248(a).) Here the Board gave Mr. Pallan notice of its belief that a set of facts did exist which would cause his position to become vacant, and it initially invited him to address the matter. But he refused to do so unequivocally. Thereafter the Board concluded that a vacancy did exist, and by appointing Mr. Smith to fill it in effect confirmed its determination that sufficient facts existed to have caused it. (Cf., *Klose* v. *Superior Court*, *supra*, at 918.)

However, although the determination of whether a vacancy exists lies with the appointing power, where the appointing power fills the vacancy,

> "...the incumbent `is not thereby concluded as to the fact of the occurrence of such event. <u>He may still question and contest the allegation of that fact</u>, either before or after the installation of the appointee, before such installation, if he refuse to vacate the office, in an action by the people to oust him; or, <u>after such installation, in an action by the people on his relation to oust the appointee</u>. Thus he may always have his day in court before it can be conclusively adjudged against him that the office was vacant at the time the appointment was made.'" (*Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 918, quoting *People* v. *Fleming*, *supra*, 100 Cal. at 541, emphases added.)

Issue thus properly arises for an action in quo warranto as to whether a vacancy did in fact exist in Mr. Pallan's position on the District's Personnel Commission. Its resolution will depend in turn on examining the set of facts which was said to have brought the vacancy about, the matter of Mr. Pallan's residency.

The term "resident" as used in section 45244 is not defined. Neither is the term "residence" used in section 1770, subdivision (e). However, in three opinions issued last year dealing with quo warranto, we had occasion to examine statutes with "residence" language similar to that found in section 45244, and to examine the language of section 1770, subdivision (e), itself. (See 72 Ops.Cal.Atty.Gen. 63, 65-68, *supra*, [Gov. Code, § 36502]; 72 Ops.Cal.Atty.Gen. 15, 21-22, *supra,* [Wat. Code, § 30500 & Elec. Code, §§ 17, 18]; 72 Ops.Cal.Atty.Gen. 8, 10-14, *supra*, [Gov. Code, § 34882].) In the Opinions we said that the term "residence" and its variants as used in those sections meant more than one's merely residing in a place, as it imparted instead the notion of what the law calls "domicile". Accordingly we concluded that notion was to apply to the sections under consideration. (72 Ops.Cal.Atty.Gen. at 66-67, at 22, at 11, relying on *Walters* v. *Weed* (1988) 45 Cal.3d 1, 7 [so interpreting Gov. Code, § 244[5]]; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239-240 [so interpreting Code Civ. Proc., § 417 and Gov. Code, § 244]; *Fenton* v. *Board of Directors* (1984) 156 Cal.App.3d 1107, 1112 [so interpreting Gov. Code, § 61200 and Gov. Code § 244]; see also 30 Ops.Cal.Atty.Gen. 6, 10, *supra* [equating "inhabitant" and "resident" as used in § 1770(e)].)

We conclude now that the term "resident" as used in section 45244 should be similarly understood. As such, the matter to be considered is not whether Mr. Pallan was merely residing within the territorial jurisdiction of the Compton Unified School District, but whether he was <u>domiciled</u> there. (Cf., 72 Ops.Cal.Atty.Gen. 8, 12 ["While Mr. Silva may have established `residency' in the City of Huron, the question becomes whether or not he is domiciled in that city pursuant to Government Code sections 34882 and 1770(e)."].) There are crucial differences between the notions of mere residence and that of domicile.

The notion of residence, connotes a place where a person's habitation is fixed for some period of time, but where he or she does not have the intention of remaining. (Cf., Elec. Code, § 200, subd. (c).) It has been described as "any factual place of abode of some permanency, more than a mere temporary sojourn." (*Smith* v. *Smith*, *supra*, 45 Cal.2d at 239.) On the other hand, the notion of domicile expresses the place where a person's habitation is fixed and where he or she does have the intention of remaining, and/or returning whenever absent. (Cf., Elec. Code, § 200, subd. (b).) It has been defined as "the one location with which for legal purposes a person is considered to have the most settled and permanent connection" (*Smith* v. *Smith*, *supra*), "a physical presence plus an intention to make that place [one's] home." (*Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1112).

"Domicile" thus comprehends more than mere "residence" because it "includes both the <u>act</u> of residence and an <u>intention</u> to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time." (*Smith* v. *Smith*, *supra*, 45 Cal.2d at 239; accord, *Walters* v. *Weed*, *supra*, 45 Cal.3d at 71; *Johnson* v. *Johnson* (1966) 245 Cal.App.2d 40, 44; see also, Elec. Code, § 200, subds. (b),(c).) Thus, Mr. Pallan may well have resided in the Compton Unified School District, but may not have been, and may not be now, a <u>domiciliary</u> of the District as required by section 45244.

---

[5]Section 244 of the Government Code sets forth various considerations to determine "residence", e.g., "the place where one remains when not called elsewhere for labor or other special or temporary purposes, and to which [one] returns in seasons of repose." (*Id*., subd. (a).) However, the courts have said the notion expressed in that section is actually one of "domicile", and not one of "residence", and have treated it accordingly. (See e.g, *Walters* v. *Weed*, *supra*, 45 Cal.3d. at 7; *Smith* v. *Smith*, *supra*, 45 Cal.2d at 239; *Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1113-1114; cf., 72 Ops.Cal.Atty.Gen. 63, 64, *supra*.)

The question of where a person is "domiciled" is a mixed one of law and fact. (*Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1117.)  As we said last year:

> "Many factors enter into this equation, including where an individual is registered to vote and his or her address for mail (*Ballf* v. *Public Welfare Department* (1957) 151 Cal.App.2d 784, 788-89), where his or her tax returns are filed (*Johnson* v. *Johnson* [*supra*,] 245 Cal.App.2d 40, 44), where an automobile is registered (8 Ops.Cal.Atty.Gen. 221 (1946), and where a homeowner's exemption or renter's credit is taken (Cal. Elec. Code, § 211; *Fenton* v. *Board of Directors*, *supra*, at p. 1112.)" (72 Ops.Cal.Atty.Gen. 15, 22, *supra*.)

But we also said that "the critical element is one of intent, and while the declarations of the individual in this regard are important, such declarations are not determinative.  The acts of the individual must be examined as well.  *Mauro* v. *Department of Mental Hygiene* (1962) 207 Cal.App.2d 381, 389." (72 Ops.Cal.Atty.Gen., *supra*.)

As was the situation in the quo warranto matters addressed last year, the declarations in this case point in both directions as to whether Mr. Pallan was (and is) domiciled at his apartment in Compton.  He owns a building in Compton where his business is located and where he lives part of the time in one of four apartments above it; he spends most of his non-working time there; he is registered to vote there; he receives mail there; it is the address shown on his driver's license and given on his tax returns; and his DMV records indicate it as one of his addresses.  These factors indicate substantial activity by Mr. Pallan in the Compton area which point to his being a Compton domiciliary.

But Mr. Pallan states that his intention for moving to the Compton apartment was to serve on the Personnel Commission of the District and because he found it more convenient "as a base from which [he could] attend meetings during the day or after work, shower and change when necessary and socialize with ease and comfort with ... business and social contacts."  This is something less than an unequivocal determination to make the place his domicile, his most settled and permanent connection (cf., *Smith* v. *Smith*, *supra*, 45 Cal.2d at 239), and the place where he "remains <u>when not called elsewhere for labor or other special or temporary purpose</u>, and to which he ... returns in seasons of repose." (Gov. Code, § 244, subd. (a); emphasis added.)

Then pointing directly toward Mr. Pallan being domiciled in South Gate is the uncontroverted fact that he has owned a home in that City for twelve years and lived there with his wife, at least until a month after he was initially appointed to the Personnel Commission in December, 1984.  He also claims his homeowner's exemption for tax purposes on that property, and his DMV records list it as an identifying address for him and also show it as the address at which an automobile is registered in his name and his wife's. (Cf., Elec. Code, § 211; *Fenton* v. *Board of Directors*, *supra*, 156 Cal.App.3d at 1115-1116.)  This shows connection of Mr. Pallan with South Gate.

The factual issues bearing on where Mr. Pallan was and is domiciled are thus conflicting.  As to them, in considering the Application "it is not the province of the Attorney General to pass upon the issue ... or to indicate whether the proposed plaintiff or defendant should, in his opinion, prevail, but rather ... to determine whether there exists a state of facts or questions of law that should be determined by a court in an action in Quo Warranto." (19 Ops.Cal.Atty.Gen. 87, 88 (1952); accord, 72 Ops.Cal.Atty.Gen. 8, 9, *supra*.)  In our opinions last year, and ones before then (e.g., 8 Ops.Cal.Atty.Gen. 221, *supra*), when the issue of domicile was raised and the facts presented were similarly conflicting and equivocal toward establishing the domicile of the proposed defendant, we viewed that as being insufficient to grant leave to sue in quo warranto, and denied the

Applications accordingly. (See 72 Ops.Cal.Atty.Gen. 69, *supra*; 72 Ops.Cal.Atty.Gen. 15, *supra*; 72 Ops.Cal.Atty.Gen. 8, *supra*.) But those opinions did not involve a challenge by the former office holder questioning the correctness of his appointing power's having considered a vacancy to exist in his position and having filled it. As discussed, Mr. Pallan has a right to be heard in court on that issue. (Cf., *People* v. *Fleming*, *supra*, 100 Cal. at 541; *People* v. *Brite*, *supra*, 55 Cal. 79; *International Assn. of Fire Fighters* v. *City of Oakland*, *supra*, 174 Cal.App.3d at 697-698; *Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 917, 918; 30 Ops.Cal.Atty.Gen. 6, 10, *supra*.) We thus believe that a substantial mixed issue of fact and law regarding Mr. Pallan's domicile is presented which should be resolved by a court and justifies granting leave to sue.

### 3. The Public Interest.

The Attorney General will grant leave for a private party to sue in quo warranto when (1) the Application presents a substantial question of law or fact, and (2) it appears that the public interest would be served by a judicial resolution of the question. (Cf., 67 Ops.Cal.Atty.Gen. 151, 151 (1984).) Indeed, we have viewed the existence of a substantial question of law or fact calling for judicial resolution to present a sufficient "public purpose" to warrant the granting of leave to sue (cf., 73 Ops.Cal.Atty.Gen. 183, 188 (1990); 67 Ops.Cal.Atty.Gen. *supra* at 153; 26 Ops.Cal.Atty.Gen. 237, 240 (1955)) and have denied it then only in the presence of countervailing considerations (see e.g., 67 Ops.Cal.Atty.Gen. *supra* at 161; 36 Ops.Cal.Atty.Gen. 317, 319-320 (1960); 35 Ops.Cal.Atty.Gen. 115, 119, *supra*).

When this Application was originally filed we found that a countervailing consideration was present. Suit was pending in Superior Court (Pallan v. Compton Unified School District, et al. (Super. Ct. L.A. County, 1989, No. C 730286)), which Mr. Pallan had filed, that raised the same issues and sought essentially the same redress that would have been afforded in the proposed quo warranto action.[6] We did not believe it to be in the public interest to two have law suits pending on the same issues at the same time. (See 73 Ops.Cal.Atty.Gen. 109, 110, *supra*.)

That impediment no longer exists. Mr. Pallan has requested dismissal of his Superior Court action, and on May 22, 1990 it was dismissed.

The within Application presents substantial issues of law and fact which warrant judicial resolution. They relate to the matter of Mr. Pallan's domicile, and to the demands of section 45244 of the Education Code. Although the term of the questioned office will expire on December 1, 1990, Mr. Pallan does have the right to have the matter of his domicile judicially determined in order to contest the issue of whether a vacancy did in fact exist on the Personnel Commission of the Compton Unified School District. (Cf., *People* v. *Fleming*, *supra*, 100 Cal. at 541; *People* v. *Brite*,

---

[6]When originally filed, the suit sought, among other things, injunctive relief to enjoin the District and Superintendent Kimbrough from "declaring a vacancy to exist" on the Personnel Commission and from making an appointment to replace Mr. Pallan. Mr. Pallan's prayer for a Temporary Restraining Order was denied and the Board then formally appointed proposed defendant Smith to serve the remainder of Mr. Pallan's term. (Cf., Ed. Code, § 45248.) An Amended Complaint was subsequently filed to reflect the changed circumstances. It sought, inter alia, (i) a Writ of Mandate to set aside Mr. Pallan's "removal" from the Personnel Commission and his "replacement" by Mr. Smith; (ii) a declaration that the Board illegally "declared a vacancy" in his position and appointed a successor; (iii) a judgment that Mr. Pallan is a Compton resident; and (iv) a judgment that he is entitled to the office of Personnel Commissioner and that he be reinstated to it.

*supra*, 55 Cal. 79; *International Assn. of Fire Fighters* v. *City of Oakland*, *supra*, 174 Cal.App.3d at 697-698; *Klose* v. *Superior Court*, *supra*, 96 Cal.App.2d at 917, 918.)  Then too, the resolution of the legal issue of whether section 45244 of the Education Code requires a member of a school district Personnel Commission to continue to reside within the district throughout a term of office, is important not only to Mr. Pallan but to all school districts throughout the state with personnel commissions.  (Cf., 35 Ops.Cal.Atty.Gen. 198, 203, *supra*.)

Accordingly we believe the public interest would be served by granting the Application For Leave To Sue.  Whereupon it is determined that leave for Mr. Pallan to sue Larry Smith in quo warranto, on terms consistent with this Opinion, is granted.

\* \* \* \* \*