[S. F. No. 19054.   In Bank.   Oct. 14, 1955.]

EYTHLE SMITH, Respondent, v. RAY SMITH, Appellant.

Desmond N. Bonnington, Anderson & Peck, Milner J. Anderson and Edward F. Peck for Appellant.

Harris, Darter & Older and R. J. Darter for Respondent.

SPENCE, J.—Defendant appeals from certain portions of the interlocutory decree of divorce and related orders. He challenges the propriety of the trial court's assumption of

*in personam* jurisdiction over him by virtue of the service of process on him without the state. His objections cannot prevail in view of the provisions of the governing statutes. (Code Civ. Proc., §§ 412, 413, 417.)

Section 417 of the Code of Civil Procedure provides: "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State at the time of the commencement of the action or at the time of service." Section 412 provides that a person who "resides out of the State. or has departed from the State; or cannot, after due diligence, be found within the State; or conceals himself to avoid the service of summons" is subject to service by publication. Section 413 provides that under such circumstances, personal service outside the state is "equivalent to publication."

On October 27, 1953, plaintiff filed her complaint for divorce, alimony, division of personal property, counsel fees and costs. On the same day she obtained an order directing service of summons by publication. Her supporting affidavit states that defendant "temporarily resides out of the State of California, to-wit: Buffalo, New York"; and the order states that it appears from the affidavit that defendant "does not reside" in California and "resides" in Buffalo, New York. Defendant was personally served in Buffalo on October 30, 1953. Following defendant's default and on December 3, 1953, plaintiff was granted an interlocutory decree of divorce—including provision for alimony and the division of personal property—and a separate order awarding attorney fees and costs.

Thereafter, defendant, appearing specially, moved to vacate the decree, except for its declaration that plaintiff was entitled to a divorce, and the order, on the ground that no jurisdiction over his person had been obtained because he was not "a resident" of this state at the time of the commencement of the action or at the time of service. (Code Civ. Proc., § 417.) His supporting affidavit states that in January, 1953. he left California and established his residence and domicile in Cincinnati, Ohio, where he maintained his permanent abode and the permanent headquarters of his business of lecturing on real estate and selling a certain publication connected with the lecture course; that he had not actively participated in

the management of his real estate business in California since 1951, but it was operated by a manager; that he did not have when he left California, and does not have, any intention of returning to California.

At the hearing of the motion to vacate, plaintiff testified, supporting her statements in part with documentary evidence: That for more than 20 years prior to their separation in January, 1953, she and defendant had resided together in Alameda County; that defendant had long maintained a real estate business in Oakland, the last eight years being at the same address; that in January, 1953, he left California on an extended lecture and book-selling tour, visiting many cities throughout the United States but remaining in each place no more than a week or ten days; that he returned to Alameda County for four days in May, 1953, and then resumed his tour, meanwhile, as before, communicating regularly with the manager of his Oakland real estate office, maintaining his address for mail and bills at the address of his Oakland business, where he kept the supplies for his book-selling tour; and that throughout 1953 defendant's daily mail, received at his Oakland business address, was forwarded to him at the various cities where he sojourned. During 1953 defendant kept his business bank account in California and made withdrawals from it; he left his automobile registered in California and retained his California business address for federal income tax purposes; he left clothing and other personal property with plaintiff at her home in Oakland, Alameda County; and he repeatedly expressed to plaintiff and others, both orally and in writing, his intention to return to Oakland when a property settlement with plaintiff was made and he had earned enough money to pay outstanding bills, in line with his plan to keep control of the policy and management of his California real estate business and to build up the organization.

The trial court denied defendant's motion to vacate and granted plaintiff additional attorney fees. Defendant appeals from this order of denial, from the interlocutory decree, except insofar as it declares plaintiff entitled to a divorce, and from the orders for attorney fees and costs. While the court did not make a specific finding as to the domicile of defendant, it is clear from the record that it denied relief to defendant upon acceptance of plaintiff's claim that defendant was at the time of the commencement of the divorce action a domiciliary of this state, and hence the court had

jurisdiction to render an *in personam* judgment against him following the personal service of process on him in New York. (Code Civ. Proc., § 417.) Defendant contends that the words "resident of this state," as used in the cited statute, do not contemplate domicile as the jurisdictional factor but rather require residence in fact, even physical presence, of defendant within the state; but such contention cannot be sustained

As used in section 417, the word "resident" has not been specifically defined by code or judicial decision and its meaning must therefore be determined here. ■ Courts and legal writers usually distinguish "domicile" and "residence," so that "domicile" is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas "residence" connotes any factual place of abode of some permanency, more than a mere temporary sojourn. ■ "Domicile" normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time. (28 C.J.S. "Domicile," § 1, p. 1 et seq.; 16 Cal.Jur.2d "Domicile," §§ 2-3, pp. 647-649.) ■ But statutes do not always make this distinction in the employment of those words. They frequently use "residence" and "resident" in the legal meaning of "domicile" and "domiciliary," and at other times in the meaning of factual residence or in still other shades of meaning. (Rest., Conflict of Laws, § 9, com. e; 17 Am.Jur. "Domicile," § 9, p. 593.) For example, in our codes "residence" is used as synonymous with domicile in the following statutes: sections 243 and 244 of the Government Code, giving the basic rules generally regarded as applicable to domicile (*Lowe* v. *Ruhlman*, 67 Cal.App.2d 828, 833 [155 P.2d 671]); section 301 of the Probate Code, relating to jurisdiction for the administration of decedents' estates (*Estate of Glassford*, 114 Cal.App.2d 181, 186 [249 P.2d 908, 34 A.L.R.2d 1259]); and section 128 of the Civil Code, providing that a divorce must not be granted unless the plaintiff has been "a resident" of the state for one year (*Ungemach* v. *Ungemach*, 61 Cal. App.2d 29, 36 [142 P.2d 99]). On the other hand, "nonresident" has a more factual meaning in contemplating an actual, as distinguished from a constructive or legal resi-

dence in the following statutes: section 537 of the Code of Civil Procedure, providing for attachment in a contract action of property of a defendant "not residing in this State" (*Hanson* v. *Graham,* 82 Cal. 631, 633 [23 P. 56, 7 L.R.A. 127]); and section 404 of the Vehicle Code, providing for substitute service on "a nonresident" in an action arising from the operation of an automobile in this state (*Briggs* v. *Superior Court,* 81 Cal.App.2d 240, 246 [183 P.2d 758]). As stated in the Briggs case at page 245: "Residence, as used in the law, is a most elusive and indefinite term. It has been variously defined. . . . To determine its meaning, it is necessary to consider the purpose of the act." (See Reese and Green, "*That Elusive Word, 'Residence,'*" 6 Vanderbilt L.Rev. 561; 1 Beale; Conflict of Laws, p. 109 et seq.)

■ With respect to section 417 of the Code of Civil Procedure, it must be concluded that the word "resident" is used in reference to domicile, and hence means "domiciliary." In this connection, the historical background of section 417, enacted in 1951, is significant. For many years sections 412 and 413 had been in our code, in language literally broad enough to have permitted a personal judgment against a defendant based on substituted service outside the state. However, the right to the entry of such personal judgment was denied. The leading case was *Pennoyer* v. *Neff* (1877), 95 U.S. 714 [24 L.Ed. 565], which declared that a court could not acquire personal jurisdiction over a nonresident defendant in an action through the service of process outside the state of the forum. This theory of jurisdiction, based on the concept of "power" over the person of defendant, was then applied in *De la Montanya* v. *De la Montanya* (1896), 112 Cal. 101 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82], so as to hold that service by publication upon a defendant outside the state was insufficient under the federal due process clause to support a personal judgment, even though the defendant was a domiciliary and had left the state to avoid service. The factual distinction of a domiciliary defendant was rejected with the statement that "domicile has never . . been made the test of jurisdiction to render a personal judgment." (P. 109.) Then in *Milliken* v. *Meyer* (1940), 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357], these principles of jurisdiction were reexamined, and it was decided that despite the broad language of *Pennoyer* v. *Neff, supra,* domicile in the state where a personal action is brought makes an absent defendant amenable to personal

service without the state, having due regard for the requirement of due process. The state statute there applying authorized such service when a "resident . . . departed . . . to avoid . . . service." In California, however, according to dictum in *Pinon* v. *Pollard* (1945), 69 Cal.App.2d 129, 132 [158 P.2d 254], the case of De la Montanya still remained the law.

Then in report to the Governors of the State Bar for the year 1945-1946, the Committee on Administration of Justice of the State Bar of California recommended legislation on the matter. It specifically proposed the "adoption of a new section of the Code of Civil Procedure to be numbered 417," with the original draft using the word "domiciled in" where the words "a resident of" now appear. This recommendation was made so as to abrogate the dictum in *Pinon* v. *Pollard*, *supra*, and "to bring our statutes clearly within the reasoning of the Supreme Court in the Milliken case and define the effect of personal service outside the State." (21 State Bar Journal, p. 170.) The committee's successive reports used the words "domicile" and "residence" interchangeably, but the text as introduced in the Senate, after slight amendments, still contained the words "domiciled in." (See 22 State Bar Journal, p. 261; 23 State Bar Journal, p. 196; 25 State Bar Journal, p. 287.) In 1951, when acting on the proposed section, the Senate changed those words to read "a resident of." (Senate Daily Journal, May 8, 1951, vol. 2, Regular Session, p. 2076.) A Progress Report of the Senate Interim Judiciary Committee filed in June, 1951 (p. 37), made no mention of the change in wording, used the words "domicile" and "residence" as synonymous, and stated that the purpose of the proposed section 417 as embodied in Senate Bill No. 302 was to abrogate the doctrine of the Pinon case and to conform the California law to "the doctrine laid down by the United States Supreme Court in the case of *Milliken* v. *Meyer* (1940), 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]." (Vol. 1, Appendix to Journal of Senate, Regular Session 1951.)

In view of this legislative background, defendant unavailingly argues that the words "domiciled in" were stricken from the proposed section 417 and the words "a resident of" were inserted for the purpose of describing the more factual concept of residence, even in the sense of physical presence. Rather, it clearly appears that the drafters of the statute regarded the words "a resident of" and "domiciled in" as

synonymous and interchangeable. And their reported comments expressly show that the purpose of the new section was to bring California law into line with *Milliken* v. *Meyer, supra,* which case specifically related to a domiciliary. In these circumstances, it is reasonable to conclude that the amendment was made to accord in wording with the terminology most frequently used in our codes. The word ''domicile'' is used there only exceptionally: section 129 of the Civil Code, where in a divorce action ''neither the domicile nor residence of the husband shall be deemed to be the domicile or residence of the wife . . .''; section 946 of the Civil Code, providing that personal property is governed by the law of the owner's ''domicile.''

In *Allen* v. *Superior Court* (1953), 41 Cal.2d 306 [259 P.2d 905], an automobile accident case, the application of section 417 was at issue where the defendant was ''a resident of'' California at the time of commencement of the action but was ''no longer a resident'' when the order for out-of-state service was made and he was personally served in Oregon. After reviewing the above-noted judicial background culminating in *Milliken* v. *Meyer, supra,* 311 U.S. 457, the Allen case held that section 417 of our Code of Civil Procedure was designed to restrict the broad authority of sections 412 and 413 with respect to personal jurisdiction as to defendants who had their *residence* within the state either at the time of commencement of the action or at the time of service, and who had been personally served with summons; and that reasoning analogous to that prevailing in *Milliken* v. *Meyer* justified the application of section 417 ''where a *domiciliary* at the time of the commencement of the action thereafter changes his state of residence and is personally served with process in the latter state.'' (41 Cal.2d 312-313.) Thus, the Allen case, relying on the domiciliary rule of the Milliken case (where the statute provided for substituted service on ''a resident'' of the state who had departed therefrom to avoid service) used the terms ''domiciliary'' and ''resident,'' ''domicile'' and ''residence'' as synonymous. (See Ehrenzweig and Mills, ''*Personal Service Outside the State,*'' 41 Cal.L. Rev. 383.)

It is true, as noted by defendant, that in the Allen case as well as in *Myrick* v. *Superior Court* (1953), 41 Cal.2d 519 [261 P.2d 255], the absent defendant on whom extraterritorial personal service was made was not only domiciled in California but was likewise physically present in this state

at the time of commencement of the action. However, while such factual situation existed in both of those cases, the controlling factor was the "domicile" of defendant at the required time showing his connection with this state so as to constitutionally justify bringing him within its jurisdiction for purposes of personal judgment by means of extraterritorial personal service. ▮ In the present case, accepting as true plaintiff's evidence in support of the validity of the personal judgment here rendered (*Estate of Peters*, 124 Cal.App. 75, 77 [12 P.2d 118]), it appears that defendant was a domiciliary who was outside the state temporarily both at the time of commencement of the action and at the time of service, and that he was properly brought within the personal jurisdiction of the court in a manner satisfying the requirements of procedural due process. The fact that defendant physically absented himself from the state prior to the commencement of the action and remained without the state at all stages of the proceedings is of no significance under the principles of the Milliken case, which case is significant in measuring the scope and purpose of section 417 of our Code of Civil Procedure. (*Allen* v. *Superior Court*, *supra*; *Myrick* v. *Superior Court*, *supra*.)

▮ Defendant points to the statement in the order for service by publication that defendant "does not reside" within California but "resides" in Buffalo and claims that it is inconsistent with the requirement of section 417 that defendant be "a resident of this state" at the specified times. The alleged inconsistency exists in the main under his views as to the meaning of the section, and not as it has been above construed. However, it must be conceded that any purported discrepancy might have been avoided through the use of wording which would have more accurately reflected what was actually meant. The order was based solely on plaintiff's affidavit, in which she stated that defendant temporarily resided outside California and in Buffalo, New York, thereby evidently meaning the situation to which she later testified— that defendant was on a lecture tour, and that Buffalo was the city he had then reached for a short sojourn. Such mere temporary sojourn, involving no more than physical presence, would not constitute defendant a resident there according to the ordinary concept of the term. (See Reese and Green, "*That Elusive Word, 'Residence,'*" 6 Vanderbilt L.Rev. 561; 1 Beale, Conflict of Laws, pp. 109-110.) The trial court probably left out "temporarily" to conform to the first situ-

ation specified in section 412 of the Code of Civil Procedure— "resides out of the State." It would have been more accurate to have stated in the affidavit, and also in the order, in accord with the second situation of section 412—that defendant had "departed from the State." However, defendant does not attack the substituted service on the ground of insufficiency of the affidavit but recognizes its validity for the purpose of the divorce proper. Nor does he claim that the statement in the order is true, for at all stages of the proceedings he has urged that his "residence and domicile" was in Cincinnati, Ohio, a contention rejected by the trial court. It need only be said that defendant's objection raises merely a technicality, which cannot affect the merits of the decision on the jurisdictional issue. (Cf. *Buxbom* v. *Smith*, 23 Cal:2d 535, 542-543 [145 P.2d 305].)

The decree and orders are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.