ROBERT J. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Smith v. Commissioner
Docket No. 8819-72.
United States Tax Court
T.C. Memo 1975-314; 1975 Tax Ct. Memo LEXIS 58; 34 T.C.M. (CCH) 1367; T.C.M. (RIA) 750314; October 20, 1975, Filed R. Patrick Smith, for the petitioner. Karin T. Skeen, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1967 and 1968 in the amounts of $907.31 and $1,098.29, respectively. The only issue for decision is whether for Federal income tax purposes, petitioner was domiciled in a community property state during the years in issue. If so, he may exclude one-half of his salary from income as the income of his non-resident alien wife. FINDINGS OF FACT All of the facts have been stipulated by the parties, and are found accordingly. Petitioner filed a separate income tax return for 1967 with the Internal Revenue Western Service Center at Ogden, Utah, and a separate income tax return for 1968 *59 with the Director of International Operations at Washington, D.C. He resided in Point Mugu, California, when he filed his petition. Petitioner was born in Minnesota on April 14, 1929. He resided there with his family until he entered the military service in 1946. While in the military service he served in the states of Florida and Texas as well as in Japan. He was sent to Fort Lawton, Washington, for his discharge in 1949. He spent one month visiting an aunt in Los Angeles, California, before returning to the family home in St. Paul, Minnesota in order to complete high school. In June 1950 petitioner worked for a short while in Kansas City. When the Korean war began, he reenlisted in the Air Force. During this period of service in the Air Force, his duty stations were in South Dakota and New Mexico. In 1953 petitioner was discharged from the service in New Mexico. He immediately returned to Minnesota and lived with his mother and sister in St. Paul, where he attended the University of Minnesota until 1955. In 1955 he took a job with RCA in New Mexico. After six months he resigned from RCA to take a position with Philco Corporation. He accepted employment with Philco in New Mexico *60 with the understanding that he would receive one month's training in Philadelphia, Pennsylvania, and then be assigned to Japan. Pursuant to this agreement, petitioner was sent to Japan, where, except for a one-year assignment in Korea, petitioner resided from 1955 through 1971. In 1957 petitioner married a Japanese woman. They lived together as husband and wife until their divorce in 1971. During their marriage they had two children, both born in Japan. The children each speak both English and Japanese and attended day school in Japan. At all times during their marriage, petitioner's wife was a non-resident alien and citizen of Japan. In 1958 petitioner's mother and sister moved from Minnesota to San Francisco, California, and they have since resided in San Francisco. Until she moved to California, petitioner's mother had lived in Minnesota since before petitioner's birth. The address shown on the address label on petitioner's 1967 and 1968 income tax returns is that of petitioner's mother and sister in San Francisco. In 1966 Philco management, in conjunction with the United States Government, determined that petitioner's position should be a civil service position rather than *61 a position held by a technician employed by private industry. Accordingly, petitioner left Philco to become a civil service employee of the United States Government, specifically, the Department of Defense. Petitioner was employed by the United States Government in Japan from 1966 through 1971. After becoming a civil service employee, petitioner had two temporary duty assignments in the United States. In 1966 he spent approximately six weeks in the United States. Of this time, a few days were spent working in Sacramento, California, and approximately four weeks were spent working in Rome, New York. During the remaining two weeks petitioner stayed with his mother and sister in San Francisco. In 1967 petitioner spent approximately one month in California, working in Sacramento during the week and spending the weekends in San Francisco with his mother and sister. While working in Sacramento, petitioner lived in a motel. Neither petitioner's wife nor children accompanied him on these temporary duty assignments. The civil service position held by petitioner limited overseas duty to a maximum period of five years. Upon termination of the five-year limitation period, civil service employees *62 such as petitioner had no absolute right to return to a particular job location in the United States. An employee could, however, designate a "zone" of the United States in which he desired to work upon his return to the United States. The Department of Defense had divided the United States into four zones that could be listed in order of preference by an overseas employee required to return to the United States upon termination of the five-year period. Employees would be offered jobs in their highest priority zone where a vacancy existed. An employee could also designate a state and locality within a zone if he had previously designated the state and locality as his residence upon commencement of employment as a civil service employee. The petitioner listed his mother's address in California as his "home" with the civil service while he was working in Japan. As the end of petitioner's five-year limitation period overseas approached, he accepted a civil service position with the Air Force in Clovis, New Mexico. Before beginning work, however, he learned that the position was to be downgraded in pay. Therefore, he then revoked his acceptance and accepted a civil service position in *63 Point Mugu, California. Petitioner's Federal income tax returns for years prior to 1967 were filed with the District Director in St. Paul, Minnesota. The only state income tax return filed by petitioner prior to his return to the United States in 1971 was a California income tax return for the year 1961. Petitioner never registered to vote in any state, either prior to or during the years in issue. After returning to the United States in 1971, he registered to vote in California. Petitioner maintained no bank accounts in California either prior to or during 1967 and 1968. He did, however, maintan a bank account in his own name at the Farmer's and Merchant's Bank in Las Cruces, New Mexico, from 1955 until 1973. His paychecks from Philco Corporation were deposited in the Las Cruces bank account. When he became a civil service employee in 1966, petitioner opened a joint checking account with his wife at the Chase Manhattan Bank, Tachikawa Air Force Base, Japan. All of his subsequent payroll checks were deposited in this account while he remained in Japan. Petitioner never possessed a California driver's license either prior to or during the taxable years in issue. He possessed *64 a military driver's license for driving in Japan. For both 1967 and 1968, petitioner reported only one-half of his salary on his income tax returns. The other one-half of his salary was reported by his wife as her income on her non-resident alien income tax returns. ULTIMATE FINDING OF FACT During the years in issue Robert J. Smith was for Federal income tax purposes domiciled in Japan, and not in any community property state. OPINION Petitioner maintains that during the years in issue he was a bona fide domiciliary of either New Mexico or California. Respondent concedes that if petitioner were domiciled in either of those community property states, he is entitled to exclude one-half his salary from gross income, treating it as the income of his non-resident alien wife. Similarly, petitioner concedes that if he were not so domiciled, then his entire income is attributed to him. We have found as a fact that petitioner was domiciled in Japan during the years in issue. Although the terms "residence" and "domicile" are often used interchangeably, strictly speaking they have completely different meanings.[1] "Residence" refers to where a person in fact is living, i.e., "any *65 factual place of abode of some permanency, more than a mere temporary sojourn." Smith v. Smith,45 Cal. 2d 235, 239, 288 P. 2d 497, 499 (1955). "Domicile" "involves the concurrence of physical presence in a particular place with the intention to make that place one's home * * *. It embodies a disposition toward permanence, an attitude of attachment." In re Glassford's Estate,114 Cal. App. 2d 181, 186, 249 P. 2d 908, 911 (1952). See also Dist. of Columbia v. Murphy,314 U.S. 441 (1941). It is possible to have several residences; a domicile is unique. Chambers v. Hathaway,187 Cal. 104, 200 P. 931 (1921); Leff v. Leff,25 Cal. App. 3d 630, 102 Cal. Rptr. 195 (1972). Domicile has two components, one physical--actual residence, however *66 fleeting--and one mental--the intent to live in that place indefinitely, the intent to make that place home. Texas v. Florida,306 U.S. 398, 424 (1939). Both components must occur simultaneously; without such a union a new domicile cannot be acquired. George D. Hampton, Jr.,38 T.C. 131 (1962); Aldabe v. Aldabe,209 Cal. App. 2d 453, 466, 26 Cal. Rptr. 208, 216 (1962). Once acquired, a domicile continues until a new domicile supplants it, regardless of whether one or more new residences are acquired, and regardless of the length of time one is physically away from the place of domicile. 1 Restatement of Conflicts of Laws 2d, sec. 19. Naturally, however, the length of time one is away from an alleged domicile has evidentiary value. See "Special Note on Evidence for Establishment of a Domicile of Choice", 1 Restatement of Conflicts of Laws 2d, sec. 20. There is no doubt that Japan was the sole residence of petitioner during the taxable years in issue. Domicile is the point of contention. The two cases which most closely resemble the situation *67 currently before us are Memorandum Opinions of this Court. In Joseph F. Niki,T.C. Memo. 1963-133, petitioner was born in Utah, resided in Utah, Idaho, and Japan, and was educated in California. From California he was inducted into the United States Army, serving during World War II in various locations. Upon the cessation of hostilities petitioner was assigned to Japan, subsequently becoming a civilian employee of the United States Army in Japan. From the time of his discharge in 1946 until June 1962, he lived in Japan, working in various jobs for the Federal government. In 1950 he married a non-resident alien who at all times was a citizen of Japan with a limited knowledge of the English language. From 1951 to 1962 petitioner maintained bank accounts at overseas branches of two American banks as well as savings and checking accounts in San Francisco. In denying petitioner's claim of being a California domiciliary for 1957 and 1958, this Court declared that "[petitioner's] retention and use of various residence addresses in this country seems to us merely opportunistic and do not tend to establish any definite intention to make California his home." Specifically *68 rejected was reliance upon the Status of Forces Agreement between this country and Japan which provided, interalia, that members of the "civilian component" such as petitioner "shall not be considered as acquiring any right to permanent residence or domicile in the territories of Japan." We declared: Although petitioner, as an alien resident of Japan, may not under the agreement attain any right to a permanent residence and home in that country as against the desire of the Government thereof, he is certainly not prevented from establishing a residence therein and making it his home for as long as the agreement is in force which would be an indefinite period. We find he has done just that * * *. In Robert W. Pashby,T.C. Memo. 1966-132, petitioner was born in California, lived temporarily in South Dakota, and returned to California, where he enlisted in the United States Navy. He maintained a California address while in the Navy, and lived in San Fernando, California from the date of his discharge in 1946 until he left for Japan to be married in 1953. The marriage was performed at the American Consulate in Yokohama, Japan, because petitioner and his *69 bride "wanted to be married on American soil." The Vice Consul who performed the ceremony explained that the laws of California, in particular the community property laws, would govern, should a question arise. Subsequent to his marriage petitioner did nothing inconsistent with his being a California domiciliary. Petitioner did not file California income tax returns after 1953 only because the State of California formally informed petitioner none were required during those years he was not present in the United States. His children were educated only in English, the principal language of the family. Indeed, his children were registered with the American Consul shortly after their birth and were required to have an American passport and visa to remain in Japan. Moreover, unlike the fully stipulated situation now before us, petitioner therein testified in person. The Court was "impressed with his candor and truthfulness as a witness," and found for petitioner. Niki was distinguished on its facts; no mention was made of the Status of Forces Agreement. We have concluded that petitioner in this case was domiciled in Japan during the years in issue, and not in New Mexico or California. *70 While we have given due weight to petitioner's contentions, we find those contacts with New Mexico and California which petitioner presented as proof of domicile to be, in the words of the Court in Niki, "merely opportunistic." The evidence belies any claim of New Mexico being petitioner's domicile. Within six months of moving to New Mexico, he left voluntarily for employment in Japan. The opening and retention of a bank account in New Mexico does not by itself establish an intention to make that state his home, particularly since the account continued in existence subsequent to the time petitioner now claims California became his domicile. Petitioner's alternative claim that California was his place of domicile must also be rejected. Neither prior to nor during the years in issue did petitioner ever maintain a residence, much less a domicile, in California. Between 1955 and 1971, he visited the state only twice, and then only when sent there by his employer on temporary assignments. Petitioner's argument that the Status of Forces Agreement legally precluded Japan from becoming his domicile was, as noted above, specifically rejected by this Court in Niki. We agree with *71 this conclusion of law, and note that nothing in the Pashby case is inconsistent with this view. Whether or not the country of Japan would recognize petitioner as a domiciliary for any purpose is irrelevant to the issue before us. We merely decide, as did the Court in Niki, that for Federal income tax purposes, petitioner was domiciled in Japan. It is not necessary to pinpoint the precise time at which petitioner became domiciled in Japan for Federal income tax purposes. It is sufficient merely to find that Japan was in fact petitioner's domicile before 1967 and that no change occurred through the end of 1968. Lincoln T. Taira,51 T.C. 662 (1969). Decision will be entered for the respondent.
Footnotes
1. California statutes seldom use the term "domicile." See, e.g., Cal. Gov't. Code sec. 244 (West 1966), which gives the general rules for the determination of "residence", although it is obvious that "domicile" is the meaning intended. See Smith v. Smith,45 Cal. 2d 235, 239, 288 P. 2d 497, 499↩ (1955).