TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|                              |   |                  |
|------------------------------|---|------------------|
| OPINION                      | : | No. 18-302       |
|                              | : |                  |
| of                           | : | July 20, 2018    |
|                              | : |                  |
| XAVIER BECERRA               | : |                  |
| Attorney General             | : |                  |
|                              | : |                  |
| ANYA M. BINSACCA             | : |                  |
| Deputy Attorney General      | : |                  |
|                              | : |                  |

_____


Proposed relator ART PERRY has requested leave to sue proposed defendant ALLAN MANSOOR in quo warranto to oust Mansoor from the public office of Costa Mesa city councilmember on the ground that Mansoor did not reside in Costa Mesa for several months during his term.

CONCLUSION

Proposed relator does not raise a substantial question of law or fact that warrants initiating a judicial proceeding, and allowing the proposed quo warranto action to proceed would not serve the public interest. Proposed relator's application for leave to sue in quo warranto is therefore DENIED.

ANALYSIS

A quo warranto action is used to challenge whether a person is lawfully holding a public office.[1] The process is authorized by Code of Civil Procedure section 803, which provides: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state."[2]

Where the quo warranto action is initiated "upon a complaint of a private party,"[3] the Attorney General acts as a gatekeeper; the party must obtain the Attorney General's permission before filing an action in superior court.[4] In evaluating whether to grant leave to sue, we do not endeavor to resolve the merits of the controversy, but rather "decide whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest."[5]

Proposed defendant Mansoor was elected in 2016[6] to serve a four-year term on the Costa Mesa City Council. Proposed relator Perry contends that Mansoor automatically vacated this city council seat by living outside of Costa Mesa for several months in 2017. For the reasons that follow, we disagree, and therefore deny Perry's application to proceed against Mansoor in quo warranto.

Costa Mesa is a general law city with a city manager form of government.[7] At the time of Mansoor's election, city councilmembers were elected at-large.[8] The Government

---

[1] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 165 (1993) (quo warranto is the "appropriate remedy to test the right of a person to hold public office").

[2] Code Civ. Proc., § 803.

[3] Code Civ. Proc., § 803.

[4] *Nicolopulos v. City of Lawndale*, *supra*, 91 Cal.App.4th at pp. 1228-1229.

[5] 95 Ops.Cal.Atty.Gen. 50, 51 (2012).

[6] Mansoor was first elected to the Costa Mesa City Council in 2002, and again in 2006. He was elected to the California State Assembly in 2010 and 2012. (https://www.costamesaca.gov/index.aspx?page=911, as of May 24, 2018.)

[7] See Gov. Code, § 34851 (authorizing city manager form of government).

[8] Beginning with the November 2018 election, Costa Mesa will transition to by-district

2

18-302

Code requires city councilmembers to maintain residence in the city they serve for the duration of their term.[9]

Two provisions of the Government Code[10] are particularly relevant here. Section 36502 states: "If, during the term of office, [a councilmember] moves his or her place of residence outside of the city limits . . ., his or her office shall immediately become vacant."[11] Similarly, section 1770, which describes events causing vacancies in public offices before the expiration of a term, provides that "[a]n office becomes vacant" if a councilmember "ceas[es] to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district, county, or city for which the officer was chosen or appointed, or within which the duties of his or her office are required to be discharged."[12] Thus, the question before us is whether Perry has presented a substantial question of law or fact as to whether Mansoor vacated his office by failing to reside in Costa Mesa.

The residence of a public official in this context is his or her *legal* residence, also referred to as "domicile."[13] Section 244 of the Government Code guides the determination of a person's domicile:[14]

> In determining the place of residence the following rules shall be observed:
>
> (a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.
>
> (b) There can only be one residence.
>
> (c) A residence cannot be lost until another is gained.

---

elections for its city council. (https://www.costamesaca.gov/index.aspx?page=2121, as of May 24, 2018.)

[9] Gov. Code, § 36502, subd. (a); see also Gov. Code, § 1770, subd (e).

[10] Future undesignated code references are to the Government Code.

[11] Gov. Code, § 36502, subd. (a).

[12] Gov. Code, § 1770, subd. (e).

[13] 72 Ops.Cal.Atty.Gen. 8, 11 (1989).

[14] *Smith v. Smith* (1955) 45 Cal.2d 235, 239 (sections 243 and 244 give "the basic rules generally regarded as applicable to domicile").

3

. . .

     (f) The residence can be changed only by the union of act and intent.

. . .

The determination of domicile is a mixed question of fact and law[15] that may involve various factors, including acts and declarations by the official, as well as the official's mailing address, voter registration, car registration, and tax returns.[16]  But the critical element is intent.[17]  As we have recently observed, "Because a determination of domicile is based not only on physical conduct, but also intent, the requirement that a substantial showing be made before we authorize judicial resolution is particularly pertinent."[18]  The burden of proving a change of domicile is on the party asserting it,[19] here proposed relator Perry.

Perry alleges that Mansoor was domiciled outside of Costa Mesa in a home on Pegasus Street in Newport Beach, apparently owned by Mansoor's in-laws, for several months in 2017.  Perry presents declarations of neighbors and other individuals who observed Mansoor's and his wife's cars parked frequently at the Pegasus Street house during this period, including late nights and early mornings.  People also observed Mansoor behaving as though he lived in this Pegasus Street house, by, for instance, entering the home without knocking, and giving fruit from one of its trees to a neighbor.

Mansoor, in turn, does not deny that he lived in the house on Pegasus Street for some time in 2017, but does deny that he ever changed his domicile from Costa Mesa.  He provides a sworn declaration explaining that until June 2017, he and his family lived at 433 Enclave Circle, Apartment 106, in Costa Mesa.  Voter registration forms filed in September 2016 for both Mansoor and his wife reflect that address.  Several months before their lease for the Enclave Circle apartment was due to expire in June 2017, Mansoor and his wife began working with a realtor to locate an apartment more suitable for their family—which

---

[15] *Fenton v. Board of Directors* (1984) 156 Cal.App.3d 1107, 1117.

[16] See, e.g., 99 Ops.Cal.Atty.Gen. 74, 76–77 (2016); 85 Ops.Cal.Atty.Gen. 90, 93 (2002); 72 Ops.Cal.Atty.Gen. 15, 22 (1989).

[17] 72 Ops.Cal.Atty.Gen., *supra*, at p. 14.

[18] 101 Ops.Cal.Atty.Gen. __ (2018), Opn. No. 17-601, Apr. 11, 2018, at p. 3, citing 87 Ops.Cal.Atty.Gen. 30, 31 (2004).

[19] 85 Ops.Cal.Atty.Gen., *supra*, at p. 93, citing *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268.

4

now included three children—in Costa Mesa. Mansoor provides an email from his realtor dated April 12, 2017, showing that she had established an automated search for them, and an example of the results of that searching system. They also searched real estate web sites and drove around the city in an attempt to locate an apartment. Mansoor states that he and his wife visited "many properties" in Costa Mesa between April and June 2017, and that every one of them had a waiting list. They submitted applications for "a few properties" where the waiting list was short enough that they hoped they might have a chance of securing a lease, but others had lists so long it would have been futile to apply.

Mansoor declares that despite their efforts, they were not able to secure a new lease before their June 2017 departure date because of the extremely competitive rental market in Costa Mesa. Around August 1, 2017, Mansoor and his wife noticed a for-rent sign at 2205 Canyon Drive in Costa Mesa, while they were driving to view an advertised rental. They arranged to see the property as quickly as possible, and secured the lease. Mansoor states that he believes they only got the Canyon Drive lease because they were the first ones to view the property, and submitted an application and deposit as soon as they had seen it. The Canyon Drive apartment needed extensive remodeling before Mansoor and his family were able to move in. They were able to move in on October 17, 2017, at which point Mansoor updated his voter registration to reflect the Canyon Drive address.

Mansoor declares that during the period between living in the Enclave Circle and Canyon Drive apartments, his intent was always to live in Costa Mesa, and that his residence has always been Costa Mesa. He further explains that his attachment to Costa Mesa is such that in 2012, he "gave up what was probably an easy reelection to the State Assembly because [he] was unwilling to leave Costa Mesa," opting to face a better-funded opponent and a more challenging campaign.[20]

Mindful that a change of domicile requires a union of act and intent,[21] and considering the evidence before us, we do not believe that proposed relator Perry has shown a substantial issue of fact regarding Mansoor's residence warranting the initiation of a quo warranto action. The facts regarding where Mansoor was living between the time he left the Enclave Circle apartment and the time he moved into the Canyon Drive apartment do not appear to be in dispute. Rather, the dispute is whether Mansoor changed his domicile to Newport Beach in the months between living at Enclave Circle and Canyon Drive.

---

[20] Mansoor nevertheless won reelection to the Assembly in 2012, representing the district now containing Costa Mesa.

[21] Gov. Code, § 244, subd. (f).

"[T]he acquisition of a new domicile is generally understood to require an actual change of residence accompanied by the intention to remain either permanently or for an indefinite time in the new locality."[22]  Although Perry speculates that it would have been logical for Mansoor and his family to remain, perhaps rent-free, in the larger Newport Beach house, he presents no evidence that Mansoor intended to remain in Newport Beach either permanently or indefinitely.

On the other hand, Mansoor has declared, under penalty of perjury, his intent at all times to remain a resident of Costa Mesa.  Moreover, that intent is supported by Mansoor's conduct in searching for apartments, employing a realtor, and signing a lease on an apartment that had yet to undergo substantial renovation.[23]  Perry maintains that Mansoor's intent to stay in Newport Beach until he found a suitable Costa Mesa home amounts to an intent to stay in Newport Beach indefinitely.  We do not believe that the approximate two-month period[24] between the expiration of Mansoor's Enclave Circle lease and his acquisition of the Canyon Drive lease, coupled with his efforts during those months to obtain a Costa Mesa home, produce a substantial issue of fact that he had an intent to remain in Newport Beach indefinitely.  Given the evidence before us, we do not believe that temporarily staying with relatives for a few months while making efforts to secure permanent housing is sufficient to effect a change in domicile.

The California Supreme Court reached a similar conclusion in considering, for voting purposes, the domicile of college students who had departed the previous academic year with no intention of returning to their campus housing and were currently living in expressly temporary settings, such as friends' apartments, tents, and cars.[25]  The Elections Code provides that a person's domicile for voting purposes is the place where "habitation is fixed, wherein the person has intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning.  At a given time, a person may have only one domicile."[26]  Construing the Elections Code together with section 244, the Court concluded that the students were domiciled for voting purposes at their prior campus addresses; they had to be domiciled somewhere to avoid disenfranchisement, and their temporary addresses did not qualify as domiciles because the students did not intend to

---

[22] 85 Ops.Cal.Atty.Gen., *supra*, at p. 93.

[23] 85 Ops.Cal.Atty.Gen., *supra*, at p. 93 (most important evidence of intent is conduct).

[24] The record is not clear as to when in June Mansoor's Enclave Circle lease expired.

[25] *Walters v. Weed* (1988) 45 Cal.3d 1, 7.

[26] Elec. Code, § 349.  At the time of the *Walters v. Weed* decision, identical language was contained in Elections Code section 200.  (See *Walters v. Weed, supra,* 45 Cal.3d at p. 6.)

6

remain there.[27]

The same considerations are relevant here; Mansoor must have a domicile,[28] he cannot lose his Enclave Circle domicile until another is acquired, and there is no evidence he intended to remain in Newport Beach any longer than it took to acquire a new Costa Mesa domicile.

Perry urges that our granting of leave to sue in quo warranto in 30 Ops.Cal.Atty.Gen. 6 (1957) compels that we grant leave to sue here, but we disagree. In that earlier opinion, Wallace Pond, a city councilmember of Fremont, married and moved from Fremont to a home owned by his mother-in-law, just outside Fremont's limits, in June 1956. Pond maintained a business in Fremont and used that as his mailing address. He provided an affidavit, signed on April 5, 1957, attesting that he did not intend for his mother-in-law's house to be a permanent home; rather, it was temporary, while he and his wife searched for a suitable home to buy in Fremont. In May 1957, Pond provided a further affidavit indicating that he had acquired an apartment in Fremont, and would be living there as of July 1, 1957.[29]

While Mansoor and Pond may appear similarly situated in some respects, when we balance the various factors we must take into consideration in evaluating an alleged change of domicile, we conclude that a different outcome is warranted here. First, we find it relevant that when Pond's residency was challenged, he had already lived outside of Fremont for nearly a year. Mansoor, by contrast, had obtained and moved into new housing in Costa Mesa by the time his residency was challenged. Additionally, in the Pond matter, the proposed relator provided an affidavit from a person stating that Pond had, on April 5, 1957, told that person that he "had no intention of returning to live within the City of Fremont 'for at least within the year.'"[30] In other words, the proposed relator in the Pond matter provided sworn testimony challenging Pond's intent regarding domicile. Here, there is no evidence contradicting Mansoor's stated intent to remain domiciled in Costa Mesa.[31] To the contrary, both Mansoor's actions and his words provide factual support for his claim that he had, at all times, an intent to maintain his domicile in Costa Mesa.

---

[27] *Walters v. Weed*, *supra*, 45 Cal.3d at pp. 11-12.

[28] Gov. Code, § 243.

[29] 30 Ops.Cal.Atty.Gen., *supra*, at pp. 7-8.

[30] 30 Ops.Cal.Atty.Gen., *supra*, at p. 8.

[31] See 8 Ops.Cal.Atty.Gen. 221, 223 (1946) (unverified statement of facts not persuasive against direct evidence produced by proposed defendant, leave to sue denied).

Thus, while we give weight to the fact that Mansoor, like Pond, spent some amount of time housed at a location outside the relevant city limits while serving as a councilmember, we balance that circumstance against the evidence of Mansoor's efforts to secure replacement housing in Costa Mesa, and the absence of evidence indicating Mansoor's intent to relocate elsewhere. Perry's contention that intent is inherently a question of fact that requires judicial resolution ignores his burden to raise a *substantial* issue of fact regarding Mansoor's purported change of domicile[32] and our broad discretion in evaluating quo warranto matters.[33]

Moreover, viewing the case in its full context, we do not believe that allowing a quo warranto action to proceed in this matter would serve the public interest. Although some may debate the notion that one's domicile in a particular jurisdiction can continue despite one's (temporary) abandonment of an address within that jurisdiction, to conclude that a quo warranto action is *mandated* under the present circumstances would elevate form over substance, and we decline to exercise our discretion in that way.[34] Mansoor lacked an identifiable address in Costa Mesa for only a few months, he acquired an intended address in Costa Mesa seven months before Perry submitted this quo warranto application, and he actually resided at the new Costa Mesa address for over four months by the time the application was submitted. When we consider these facts together with Mansoor's long-standing relationship to Costa Mesa and the complete lack of evidence that Mansoor ever intended to be domiciled anywhere else, we find no reasonable basis to doubt Mansoor's connection to Costa Mesa, and we do not believe that the spirit of the statutes requiring residency for city councilmembers would be served by allowing the proposed quo warranto action to proceed.

In sum, we find that Perry has not met his burden of demonstrating a substantial issue of fact or law[35] requiring judicial resolution, and further conclude that allowing a quo

---

[32] 85 Ops.Cal.Atty.Gen., *supra*, at p. 93.

[33] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 878-882 (presence of debatable issue does not require granting of quo warranto, much less demonstrate an "extreme and indefensible abuse of discretion" in denying application); 96 Ops.Cal.Atty.Gen. 48, 49 (2013); see also *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650 ("The crystallization of an issue thus does not preclude an exercise of his discretion; it causes it").

[34] See 96 Ops.Cal.Atty.Gven., *supra*, at p. 53 (existence of "debatable" issue does not require judicial resolution through quo warranto where authorizing such a suit would not serve public interest).

[35] Perry contends that there is a substantial issue of law here because "no known case has required that Section 244 apply to Section 36502(a)." But we have consistently applied the rules of section 244 for determining domicile to the residency requirement of section

warranto action to proceed under the circumstances would not be in the public interest. Therefore, the application for leave to sue in quo warranto is DENIED.

*****

---

36502, subdivision (a) (see, e.g., 99 Ops.Cal.Atty.Gen., *supra*, at p. 76; 85 Ops.Cal.Atty.Gen., *supra*, at p. 92; 72 Ops.Cal.Atty.Gen. 63, 64 (1989)), and Perry offers no reason to question this approach.