TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
| --- | --- | --- |
| OPINION | : | No. 18-1103 |
|  | : |  |
| of | : | June 13, 2019 |
|  | : |  |
| XAVIER BECERRA | : |  |
| Attorney General | : |  |
|  | : |  |
| LAWRENCE M. DANIELS | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____


Proposed relator SCOTT LEAHY has requested leave to sue proposed defendant WALLACE T. MARTIN to remove him from the public office of member of the Ridgecrest City Council on the ground that proposed defendant MARTIN did not legally reside in the city at the time his nomination papers were issued, at the time of his election, and during his term of office.

CONCLUSION

Leave to sue is GRANTED to determine whether proposed defendant WALLACE T. MARTIN meets the legal residency requirements for holding the public office of council member of the City of Ridgecrest.

1

ANALYSIS

**Introduction**

Ridgecrest is a general law city in Kern County governed by a city council consisting of a mayor and four members who serve at large. Proposed defendant Wallace T. Martin (Defendant) was elected as a Ridgecrest city council member in November 2016. Proposed relator Scott Leahy (Relator), another candidate in the election, has submitted an application in quo warranto challenging Defendant's eligibility to serve as council member for failing to be a legal resident of Ridgecrest, as required by state law, and has offered evidence and argument why he should be allowed to sue in court to remove Defendant from the office he now holds. After carefully reviewing the parties' submissions, we conclude that a substantial question is presented regarding Defendant's legal residency and that it would be in the public interest to allow a quo warranto lawsuit to proceed.

**Background**

The following timeline reflects the parties' allegations about Defendant's legal residency:

- A copy of a grant deed submitted by Relator indicates that Defendant and his wife bought a property on Felspar Avenue, located in an unincorporated area of Kern County, just outside the City of Ridgecrest, on October 3, 2001. According to a copy of another grant deed submitted by Relator, Defendant and his wife made an interspousal transfer of this property to Defendant on September 22, 2016. A newspaper article dated April 7, 2017 reports that at a Ridgecrest City Council meeting, Defendant referred to this property as his "former home." In his sworn declaration dated November 19, 2018, Defendant refers to the property as "our [his and his wife's] property."

- According to Defendant's declaration, he entered into a rental agreement to lease a property on Lee Avenue in Ridgecrest on June 27, 2016, almost 15 years after he and his wife purchased the home on Felspar. Defendant further declares that the rental agreement took effect on July 1, 2016. According to a newspaper article submitted by Relator, Defendant reportedly stated at a candidate forum held on September 29, 2016, that he was leasing the property "from a friend on a temporary basis." Later, Defendant was reported to have stated at an April 7, 2017 city council meeting that he had rented the Ridgecrest property in order to "follow the letter of the law" to be eligible for city council.

2

- On August 2, 2016, as reflected in a copy of Defendant's nominating papers submitted by Relator, Defendant stated listing his residence as the Lee Avenue address.[1] Also on August 2, 2016, according to both Defendant's declaration and his reported statement at the candidate forum mentioned above, he registered to vote using the Lee Avenue address.

- On or about October 25, 2016, according to Defendant's declaration, Defendant completed a purchase of a duplex property on California Avenue in Ridgecrest. At the city council meeting held April 7, 2017, Defendant stated that he had done so as an "extra step" to establish legal residency in the city.

- On November 8, 2016, Defendant won election to the Ridgecrest City Council in the Kern County consolidated presidential general election.[2] Relator asserts that on December 7, 2016, Defendant was sworn into office.

- On January 17, 2017, Defendant declares, the tenant in one of his duplex units on California Avenue in Ridgecrest vacated the premises at Defendant's behest. Defendant further declares that sometime in April 2017, after completing substantial repairs, he moved into this unit. His declaration further states that on April 7, 2017, he changed his driver's license to reflect this address, and that on June 5, 2018, he changed his voter registration in kind.

In his application to sue in quo warranto, Relator states that Defendant "still lives" on Felspar Avenue outside Ridgecrest and does not live at either the Lee or California Avenue addresses in Ridgecrest. Relator attaches reports from a private investigator suggesting that Defendant lodged at the Felspar Avenue address from May 9 through 11, 2018, and from May 14 through 15, 2018. In his declaration, the investigator states that during these periods, Defendant went to his place of work in Ridgecrest in the morning, came home to the Felspar Avenue address after work, and stayed there in the evening.

---

[1] These documents also indicate that on August 3, 2016, Defendant signed a pledge to conduct his campaign in accordance with the "Code of Fair Campaign Practices," and that on August 11, 2016, Defendant submitted his ballot designation worksheet. In response, Defendant does not specifically contest that he "received" his nomination papers on August 2, 2016, but rather states that he "pulled" his nominating papers on August 8, 2016. In any case, these small distinctions in terminology and timing do not affect our analysis.

[2] https://www.kernvote.com/ElectionInformation/Results?ID=88.

In the declaration he submitted in support of his opposition, Defendant states that he "stayed at" the Felspar Avenue address from May 9 through 11, 2018, and that he did so to care for his wife (as well as some animals on his property) because she needed treatment for a "medical condition." Defendant also states that he "once again stayed at" Felspar on the "evening" of May 14 and explains that this was to care for his animals while his wife traveled to UCLA for medical treatment. Defendant contends, however, that even assuming he has dual residences both inside and outside the Ridgecrest city limits, this "4-day snapshot out of 815 possible days" does not negate that his "domicile" was and is in Ridgecrest.

In reply, Relator submits additional evidence to show that contrary to Defendant's contention, it was not merely these dates that Defendant stayed at the Felspar Avenue address.[3] Relator contends that his evidence demonstrates that Defendant's "dual residence claims . . . are a sham attempt at establishing domicile in Ridgecrest city to make him eligible for city council." To support this assertion, Relator submits a sworn declaration from Lori Acton (another candidate in the Ridgecrest city council election), who states that from September 2017 through June 2018, she lived in a residence on California Avenue that had "an unobstructed view" of Defendant's duplex units, one of which Defendant states that he moved into in April 2017. Acton alleges that she had a "daily routine of checking for [Defendant] or his vehicles" at the duplex but that she never observed

---

[3] Defendant objects to the introduction of all the factual allegations in Relator's reply because they were not presented in Relator's application. However, much of Relator's reply evidence—the declarations involving service of the application materials and the amended statement of facts—could not have been argued in the original application. Moreover, at this state of the analysis, we are not conclusively adjudicating factual or legal issues, but simply determining whether to allow Relator to *initiate* a quo warranto action. In making this determination, we follow our own established procedures, which do not prohibit consideration of evidence submitted in a reply pleading in response to a showing made by the proposed defendant. (See California Attorney General, Quo Warranto, Resolution of Disputes—Right to Public Office (1990) p. 3 [quo warranto "is established solely as an action at law authorized by statute" and its application procedures "are contained in sections 803-811 of the Code of Civil Procedure and in sections 1 through 11 of the California Code of Regulations"]; Cal. Code Regs., tit. 11, § 4 [in a reply, the proposed relator may "reply to the showing thus made by the proposed defendant" in the opposition]; see also Code Civ. Proc., § 803 [Attorney General may initiate action "upon his own information" without "a complaint of a private party"]; Cal. Code Regs., tit. 11, § 10 [in certain cases of "urgent necessity," Attorney General may issue leave to sue to a proposed relator without allowing opposition from the proposed defendant].) In any event, as will be seen, we need not rely on the reply evidence to find substantial questions as to Defendant's legal residency at the time he was nominated and elected.

4

Defendant, his wife, or their cars there. Acton says that, between February and May 2018, she "would drive [her] boyfriend's sons to school each morning at 7:20 a.m." and "check" the "duplexes," and, likewise, did not see Defendant, his wife, or their vehicles there. Acton further swears that between May 2018 and October 2018, while driving to her father's residence (which she did with "considerable" frequency during this period "due to his declining health"), she passed by Defendant's duplex property each time, "specifically looked to determine" whether Defendant's or his wife's cars "were parked at that location," but "[a]t no time did [she] ever see" either of their cars parked there. On the other hand, when "occasionally" driving by the Felspar Avenue residence outside Ridgecrest, she "would observe" Defendant's and his wife's "vehicles parked in their driveway behind an electronic gate." Additionally, Acton declares that "[f]or over the past two years [she] has received telephone calls from multiple individuals who have attended dinner parties at the [Defendant and his wife's] county residence on Felspar."

Relator has also submitted declarations from two process servers—Peggy Partida and Kenneth Yule—in support of his claim that Defendant still legally resides at the Felspar Avenue property, not at any Ridgecrest address. The contents of these declarations are described below.

First, on October 27, 2018, at 8:32 a.m., Peggy Partida "personally served" Defendant at the Felspar Avenue address with the quo warranto application materials now under consideration. At the time of service, Partida declares, Defendant came to the door looking "as if he had just woken up" and wearing "sweats." Then, on October 29, 2018, at 7:25 a.m., according to an "affidavit of due diligence" (signed under penalty of perjury) attached to her declaration, Partida attempted to serve Defendant with an amended verified statement of facts at the Lee Avenue property in Ridgecrest (which Defendant was leasing) but received "no answer." At 8:00 a.m., Partida declares, she attempted to serve Defendant at the Felspar Avenue address. Partida says that while she was "on a public road while in [her] car," Defendant's wife "threatened to call the sheriff if [she] did not leave."[4]

Subsequently, on October 31, 2018, according to process server Kenneth Yule's declaration and attached "affidavit of reasonable diligence" (also signed under penalty of perjury), Yule unsuccessfully "personally attempted" to serve Defendant at the Felspar, California, and Lee addresses with the same amended pleading at 6:00 p.m., 6:30 p.m., and 7:05 p.m., respectively. On November 3, 2018, at 11:20 a.m. in yet another unsuccessful service attempt, according to Yule's declaration and attached affidavit of reasonable diligence, Yule saw Defendant's "two toned Dodge Ram parked in front of his gate at" the Felspar Avenue property. Finally, on November 5, 2018, at noon, according to Partida's

---

[4] Partida's declaration does not disclose the proximity of this road to the Felspar Avenue property or the location of Defendant's wife during this alleged incident.

18-1103

declaration and proof of service, after Defendant requested to meet in a public place, Partida served Defendant at a Denny's restaurant in Ridgecrest.

**Applicable Law**

Quo warranto is an action for challenging whether someone lawfully holds a public office.[5] Code of Civil Procedure section 803 provides: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[6] If a private party desires to bring a quo warranto lawsuit in superior court, the party must first obtain leave from the Attorney General.[7] In determining whether to grant such leave to sue, we do not decide the merits of the controversy; rather, we decide whether there is a substantial issue of fact or law warranting judicial resolution and whether permitting a quo warranto action to commence would serve the overall public interest.[8]

The position of city council member is a public office for quo warranto purposes.[9] An established ground to challenge a city council member's occupation of the office in a quo warranto proceeding is that the member does not legally reside in the city.[10] Specifically, a person may not serve as a city council member unless the person resides within city boundaries when nomination papers are issued, when assuming office, and throughout the term of office.[11] For this purpose, residence means "legal residence" or "domicile."[12] Legal residence or domicile is defined as a place of physical presence joined

---

[5] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[6] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[7] *Nicolopulos v. City of Lawndale, supra,* 91 Cal.App.4th at pp. 1228-1229; 98 Ops.Cal.Atty.Gen. 85, 87 (2015).

[8] *Rando v. Harris, supra,* 228 Cal.App.4th at p. 879; 100 Ops.Cal.Atty.Gen. 29, 30 (2017).

[9] 99 Ops.Cal.Atty.Gen. 74, 76 (2016); 87 Ops.Cal.Atty.Gen. 30, 31 (2004).

[10] See, e.g., 99 Ops.Cal.Atty.Gen., *supra,* at p. 74; 85 Ops.Cal.Atty.Gen. 90, 90 (2002); 72 Ops.Cal.Atty.Gen. 63, 63-64 (1989); 35 Ops.Cal.Atty.Gen. 198, 198-199 (1960).

[11] Gov. Code, §§ 1770, subd. (e), 34882, 36502, subd. (a); 99 Ops.Cal.Atty.Gen., *supra,* at p. 76.

[12] *Walters v. Weed* (1988) 45 Cal.3d 1, 7; 72 Ops.Cal.Atty.Gen. 8, 11 (1989).

with the intent to make the place a permanent home.[13]  It is the place where a person has "the most settled and personal connection."[14]  Although a person may have multiple residences, a person may have only one legal residence/domicile.[15]  Factors considered in determining domicile include the person's acts and declarations, mailing address, voter registration, tax returns, driver's license, and homeowner's exemption.[16]

Once established, a domicile is presumed to continue until it is demonstrated that a new domicile has been acquired.[17]  Where a relator establishes a defendant's domicile outside the relevant locality, the defendant has the burden of showing a change of domicile inside the locality.[18]  In such a case, the defendant must make a sufficient showing of "physical presence" at the alleged new domicile.[19]  To satisfy the "critical element" of intent, "declarations of intent are significant," but "they are not determinative.  The acts must be examined as well."[20]  Although there is nothing improper about establishing a domicile in order to gain eligibility for office,[21] "[i]t is not enough that a [person] desires to acquire or keep a 'legal residence' or 'legal domicil;' the intention necessary for the acquisition of a domicil is an intention as to the fact, not as to the legal consequences of

---

[13] *Fenton v. Bd. of Directors* (1984) 156 Cal.App.3d 1107, 1116; 95 Ops.Cal.Atty.Gen. 43, 46 (2012); see Elec. Code, § 349, subd. (b) ("The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning"); Gov. Code, § 244, subd. (a).

[14] *Smith v. Smith* (1955) 45 Cal.2d 235, 239.

[15] Gov. Code, § 244, subd. (b); *Smith v. Smith*, *supra*, 45 Cal.2d at p. 239; 99 Ops.Cal.Atty.Gen., *supra*, at p. 76.

[16] 99 Ops.Cal.Atty.Gen., *supra*, at pp. 76-77; 73 Ops.Cal.Atty.Gen. 197, 209-210 (1990).

[17] Gov. Code, § 244, subd. (c); *Walters v. Weed*, *supra*, 45 Cal.3d at pp. 7-8; 90 Ops.Cal.Atty.Gen. 82, 86 (2007).

[18] *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268-1269; 81 Ops.Cal.Atty.Gen. 98, 102 (1998).

[19] 90 Ops.Cal.Atty.Gen., *supra*, at p. 86.

[20] 72 Ops.Cal.Atty.Gen., *supra*, at p. 14; see also 85 Ops.Cal.Atty.Gen., *supra*, at p. 93 ("the most important evidence of [the council member's] intent is his conduct").

[21] See 101 Ops.Cal.Atty.Gen. 16, 21 (2018) ("Moving to an electoral district in order to run for office in that district does not defeat the intent for domicile").

7

the fact."[22]

**Substantial Questions Exist as to Defendant's Legal Residency**

It is uncontested that from October 2001 to June 2016, Defendant's domicile was his Felspar Avenue property in unincorporated Kern County outside the City of Ridgecrest. Defendant therefore carries the burden of showing that he changed his domicile to a location inside Ridgecrest before being issued his nomination papers in August 2016 and before his election in November 2016.

Based on a careful review of the parties' submissions, we have no cause to doubt that Defendant *intended* that his rental property on Lee Avenue would function as his domicile for purposes of his nomination to city council, effective July 2016, but there remains a question whether it *actually became* his new domicile—that is, a place of physical presence joined with the intent to make it his permanent home. Defendant stated only that he was leasing the property "on a temporary basis" for the sake of demonstrating legal residency in Ridgecrest. While Defendant changed his voter registration to the Lee Avenue address around the time of his nomination, he has not declared that he spent any time there, let alone lived there, nor that he took any concrete steps to make it his home. We therefore find a substantial question as to whether Defendant has carried his burden of showing that he had changed his longtime domicile to a location inside Ridgecrest at the time of his nomination.

Moreover, there is a legitimate issue whether Defendant established a domicile within Ridgecrest between his nomination in August 2016 and his election in November 2016. In October 2016, Defendant purchased a duplex on California Avenue in Ridgecrest as an "extra step" to establish legal residency. Here too, Defendant's intent that his domicile be legally considered as Ridgecrest for the purpose of the election is apparent. But again, what is lacking is any corroborating evidence of his physical inhabitation, or even his physical presence, at his temporary rental on Lee Avenue between the nomination and election. According to Defendant, he did not move into one of his duplex units on California Avenue in Ridgecrest until April 2017, after his election. We therefore also find a substantial question whether Defendant has carried his burden of showing a change of domicile to Ridgecrest before the election.

Lastly, we believe that Relator has raised a significant issue as to whether Defendant has been domiciled in Ridgecrest continuously since his election in November 2016.

---

[22] *Johnson v. Johnson* (1966) 245 Cal.App.2d 40, 45, internal quotation marks omitted, spelling of "domicil" and placement of semicolon in original; see *ibid.* ("A man's home is where he makes it, not where he would like to have it").

Defendant alleges that he moved into a duplex unit on California Avenue in April 2017, but that leaves the period from November 2016 to April 2017 with no evidence that he had a fixed habitation in Ridgecrest beyond his statements that he entered into a rental agreement with a friend in order to become eligible for city council. And although Defendant summarily declares that he moved into the California Avenue unit that he purchased, he does not allege how often he has been dwelling there.

In fact, the evidence submitted by Relator credibly suggests that there has been, at least, a sizable amount of time when Defendant has had no physical presence in Ridgecrest since the election. To summarize, one potential witness declares that she regularly observed Defendant's duplex unit on California Avenue from September 2017 through October 2018 (daily from September through June, and frequently thereafter), not seeing Defendant, his wife, or their cars there. Defendant was served with the original quo warranto application in the morning at his Felspar Avenue property (outside Ridgecrest), appearing as though he had just woken up, which suggests he had slept there overnight. In addition, the process servers could not locate Defendant at his Ridgecrest addresses on multiple dates, also corroborating the allegation that he has not established an abode within Ridgecrest.[23] Indeed, Defendant does not dispute that he happened to be staying at the Felspar Avenue location on the days of the investigator's stakeout in May 2018. Other evidence allegedly identifying Defendant's and his wife's vehicles and dinner parties at their Felspar Avenue property also tends to show their regular presence there.

Without purporting to resolve Relator's claim, or conclusively determine the facts at issue, we find that the totality of the evidence submitted to us raises a substantial question whether Defendant's domicile has been in Ridgecrest at all times while serving as council member.

**The Overall Public Interest Warrants Allowing Relator to Pursue a Quo Warranto Action**

Absent countervailing considerations, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant granting leave

---

[23] See 97 Ops.Cal.Atty.Gen. 1, 4 (2014) (granting an application to sue a school district trustee in quo warranto, finding that "we cannot ignore or discount his regular absence from [the residence inside the district]" and "his regular presence at [the residence outside the district]"); 95 Ops.Cal.Atty.Gen., *supra*, at p. 48 (granting an application to sue a water district director because the documents presented "indicate little physical presence at the [district] address, coupled with significant activity and evidence of residence" outside the district).

to sue in quo warranto.[24]  We see no countervailing considerations here.  Accordingly, Relator's application for leave to sue in quo warranto is GRANTED.

*****

---

[24] 98 Ops.Cal.Atty.Gen. 94, 101 (2015); 86 Ops.Cal.Atty.Gen. 82, 85 (2003).